THE STATE OF NEVADA, DEPARTMENT OF BUSINESS AND INDUSTRY, OFFICE OF THE LABOR COMMISSIONER; AND TERRY JOHNSON, IN HIS CAPACITY AS LABOR COMMISSIONER OF THE STATE OF NEVADA, APPELLANTS, v. GRANITE CONSTRUCTION COMPANY, RESPONDENT.

No. 36881

February 13, 2002

40 P.3d 423

[Rehearing denied April 8, 2002]

*Frankie Sue Del Papa,* Attorney General, and *Dianna Hegeduis,* Deputy Attorney General, Carson City, for Appellants.

*Bible Hoy & Trachok* and *Mark J. Lenz,* Reno, for Respondent.

*Dennis A. Kist & Associates* and *David R. Ford,* Las Vegas, for Amicus Curiae International Brotherhood of Teamsters Local 631.

*Elizabeth Nadeau,* Washington, D.C., for Amicus Curiae Operating Engineers and Teamsters.

*Levy, Stern & Ford* and *Lewis N. Levy,* Los Angeles, California; *Sherman, Dunn, Cohen, Leifer & Yellig,* Washington, D.C., for Amicus Curiae Building and Construction Trades Department, AFL-CIO, Operating Engineers and Teamsters.

*McDonald Carano Wilson McCune Bergin Frankovich & Hicks LLP* and *Paul J. Georgeson,* Reno, for Amicus Curiae Associated General Contractors.

*Michael E. Langton,* Reno, for Amicus Curiae Building and Construction Trades Council of Northern Nevada.

*Neil Ditchek,* Washington, D.C., for Amicus Curiae International Brotherhood of Teamsters.

# OPINION

*Per Curiam:*

This appeal involves the interpretation of NRS 338.040, Nevada's prevailing wage law. Specifically, we are asked to determine the meaning of the phrase "at the site of the work." The Labor Commission interprets the phrase to include locations other than the actual place where a public works project is situated. The district court, in a petition for judicial review proceeding, found that the phrase is limited to the actual physical location of the public project being constructed. We conclude that the phrase "at the site of the work" can include the transportation of materials from the remote location where they are assembled to the main public

project construction site. We therefore reverse the order of the district court granting the petition for judicial review and remand this matter to the district court.

## FACTS

In 1997 and 1998, the Nevada Department of Transportation (NDOT) awarded Granite Construction Company, a general contractor engaged in the construction of public works, three separate road construction contracts: (1) Contract No. 2829 near Emigrant Pass, Nevada; (2) Contract No. 2886 near Battle Mountain, Nevada; and (3) Contract No. 2949 near Trinity, Nevada. The construction work on these projects consisted of building and resurfacing portions of the state highway system.

The contracts provided that Granite could either manufacture the aggregate for the highways from pits leased by the State (''borrow pits'') or purchase the aggregate from independent third-party suppliers. Granite ultimately used three borrow pits. Suzie Creek Pit No. EL81-01, used for the Emigrant Pass project, was located approximately five miles from the nearest end of that project. Pit No. HU83-06, used for the Battle Mountain project, was located approximately four miles from the nearest end of the project. Finally, Pit No. CH30-02, used for the Trinity project, was located approximately fifty-six miles from the nearest end of that project.

Borrow pits contain raw material that Granite processed to produce aggregate meeting the contract specifications. Because Granite needed to process the raw material, it was not charged for the use of the pits. The State of Nevada had acquired rights to use the pits for state projects in general. Thus, none of the pits was solely or exclusively dedicated to the road construction projects in this case.

As part of the projects, Granite subcontracted with several trucking companies to haul the processed materials for the road construction projects from the pits to the projects. At the pits, Granite employees would crush the raw material, load and weigh the dump trucks, and provide the drivers with a ''load slip.'' The drivers would then drive four, five, or fifty-six miles to their respective projects. Upon arrival, a Granite employee would direct the driver to the desired location and operate the dump control apparatus on the truck to unload the materials. The Granite employee would then direct the truck driver to move forward as the material was deposited on the roadbed. The drivers generally would not get out of their trucks at the construction site and, once the current load was laid, the drivers would return to the pits for another load.

Although it paid the prevailing wage to its employees at the pits,

Granite did not pay the prevailing wage to the truck drivers.[1] Eventually, NDOT learned that Granite was not paying the truck drivers the prevailing wage. As a result, NDOT withheld payment of approximately $225,000.00 on the contracts and notified the Labor Commission of the alleged violation. The Commission conducted an administrative investigation into Granite's activities on the project and eventually advised Granite to pay the truck drivers the prevailing wage.

Granite then petitioned the Labor Commission for a declaratory order, asserting that an aggregate material source is not ''at the site of the work'' for purposes of NRS 338.040. The matter was assigned to a hearing officer who concluded that the truck drivers were entitled to the prevailing wage under NRS 338.040 because the borrow pits were part of the ''site of the work'' and because the truck drivers were necessary to the execution of the contracts.

Granite filed a petition for judicial review, which the district court granted after concluding that the truck drivers were not employed ''at the site of the work'' and were therefore not entitled to the prevailing wage.

## DISCUSSION

The question before this court is one of statutory construction, namely, the meaning and scope of NRS 338.040, Nevada's prevailing wage law. Questions of law are reviewed de novo.[2] ''[A] reviewing court may undertake independent review of the administrative construction of a statute.''[3]

Nevada's prevailing wage law guarantees prevailing wages to mechanics, workers and laborers in the performance of public work.[4] Also referred to as the ''Little Davis-Bacon Act'' after its federal counterpart,[5] NRS 338.040 specifies who is entitled to receive prevailing wages.[6] Specifically, the version of NRS

[1]Granite stated that it pays the prevailing wage to its employees pursuant to its union contracts, not because it believes the work performed at the borrow pits falls within the prevailing wage law.

[2]SIIS v. United Exposition Services Co., 109 Nev. 28, 30, 846 P.2d 294, 295 (1993).

[3]American Int'l Vacations v. MacBride, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983).

[4]NRS 338.020 (1999).

[5]40 U.S.C. § 276a(a) (2001).

[6]NRS 338.040 (1999).

338.040 in effect in 1999[7] provided: "Workmen employed by contractors or subcontractors or by public bodies at the site of the work and necessary in the execution of any contract for public works are deemed to be employed on public works."[8]

To determine the scope of Nevada's prevailing wage law, we first look to the relevant statutory language. It is well established that when the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it.[9] However, if a statute is susceptible to more than one natural or honest interpretation, it is ambiguous, and the plain meaning rule has no application.[10] When a statute is ambiguous, the intent of the legislature is the controlling factor in statutory interpretation.[11]

NRS 338.040 does not specifically define the term "at the site of the work." The Labor Commission contends that the term must be read in conjunction with the words "necessary in the execution of any contract for the public works." Read together, the Labor Commission asserts that the statute encompasses construction work necessary to the public works project performed at locations other than the project site. Thus, "at the site of the work" includes all locations where workers perform work necessary to the execution of a public works contract, as well as transporting materials to and from such locations.

Granite asserts that the words "at the site of the work" connotes a clear geographical limitation on those entitled to compen-

---

[7]The statute was amended in 2001, and the current version of NRS 338.040 provides:

> 1.  Except as otherwise provided by specific statute, workmen who are:
> (a) Employed at the site of a public work; and
> (b) Necessary in the execution of the contract for the public work, are deemed to be employed on public works.
> 2.  The labor commissioner shall adopt regulations to define the circumstances under which a workman is:
> (a) Employed at the site of a public work; and
> (b) Necessary in the execution of the contract for the public work.

Our decision today is based on the 1999 version of NRS 338.040. We express no opinion on what the outcome of this case would be under the current version of the statute.

[8]NRS 338.040 (1999).

[9]*City Council of Reno v. Reno Newspapers,* 105 Nev. 886, 891, 784 P.2d 974, 977 (1989).

[10]*Randono v. CUNA Mutual Ins. Group,* 106 Nev. 371, 374, 793 P.2d 1324, 1326 (1990).

[11]*Robert E. v. Justice Court,* 99 Nev. 443, 445, 664 P.2d 957, 959 (1983).

sation at the prevailing wage rate and restricts coverage to employees working on the physical site of the public work being constructed, in this case the highways.

We conclude that both are reasonable interpretations of the statute. Because the statute is susceptible to more than one honest interpretation, it is ambiguous, and we turn to legislative intent. As noted above, Nevada's prevailing wage law is derived from the federal Davis-Bacon Act. "When a federal statute is adopted in a statute of this state, a presumption arises that the legislature knew and intended to adopt the construction placed on the federal statute by federal courts. This rule of [statutory] construction is applicable, however, only if the state and federal acts are substantially similar and the state statute does not reflect a contrary legislative intent."[12]

The Davis-Bacon Act, enacted by Congress in 1931, provides in pertinent part:

> (a) The advertised specifications for every contract in excess of $2,000 to which the United States or the District of Columbia is a party, for construction . . . or public works . . . shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics . . . and every contract based upon these specifications shall contain a stipulation that the contractor or his subcontractor shall pay *all mechanics and laborers employed directly upon the site of the work . . . [the prevailing wage].*[13]

29 C.F.R. § 5.2(l), the regulation promulgated by the Secretary of Labor pursuant to the Davis-Bacon Act, defines the term "site of the work" for purposes of the Act as follows:

> (1) The site of the work is the physical place or places where the building or work called for in the contract will remain; and any other site where a significant portion of the building or work is constructed, provided that such site is established specifically for the performance of the contract or project;

> (2) Except as provided in paragraph (l)(3) of this section, job headquarters, tool yards, batch plants, borrow pits, etc., are part of the site of the work, provided they are dedicated exclusively, or nearly so, to performance of the contract or project, and provided they are adjacent or virtually adjacent to the site of the work as defined in paragraph (l)(1) of this section;

---

[12]*Sharifi v. Young Bros., Inc.,* 835 S.W.2d 221, 223 (Tex. App. 1992) (citation omitted).

[13]40 U.S.C. § 276a(a) (2001) (emphasis added).

(3) Not included in the site of the work are permanent home offices, branch plant establishments, fabrication plants, tool yards, etc., of a contractor or subcontractor whose location and continuance in operation are determined wholly without regard to a particular Federal or federally assisted contract or project. In addition, fabrication plants, batch plants, borrow pits, job headquarters, tool yards, etc., of a commercial or material supplier, which are established by a supplier of materials for the project before opening of bids and not on the site of the work as stated in paragraph (l)(1) of this section, are not included in the site of the work. Such permanent, previously established facilities are not part of the site of the work, even where the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a contract.[14]

Federal circuit courts interpreting the Davis-Bacon Act have concluded, consistent with 29 C.F.R. § 5.2(l), that the statutory phrase "directly upon the site of the work" limits coverage under the Act to employees working directly on, or virtually adjacent to, the physical site of the public work under construction.[15]

Granite is correct that, under the federal law, the borrow pits at issue here would not be considered a part of the site of the work because they are neither dedicated exclusively to the performance of these particular highway projects nor virtually adjacent to the project sites. However, the Nevada Legislature did not entirely adopt the language of the federal act when it passed NRS 338.040. The Nevada Legislature omitted the words "directly upon," used in the federal act, and instead adopted the phrase "at the site of the work" to describe coverage under NRS 338.040.

Because of this change in language, the statutory provisions of the federal act and Nevada's act are not substantially similar. The Legislature intended the scope of NRS 338.040 to be broader than that of the Davis-Bacon Act when it selected the phrase "at the site of the work" instead of "directly upon the site of the work." Thus, the federal cases cited by Granite are not controlling in determining the coverage of Nevada's act. The federal act, by its

---

[14]29 C.F.R. § 5.2(l) (2001).

[15]*L.P. Cavett Co. v. U.S. Dept. of Labor,* 101 F.3d 1111, 1115 (6th Cir. 1996) (holding that truck drivers hauling asphalt from a batch plant to a highway site were not employed "directly upon the site of the work" pursuant to Davis-Bacon Act); *Ball, Ball & Brosamer, Inc. v. Reich,* 24 F.3d 1447, 1453 (D.C. Cir. 1994) (holding that workers in borrow pits and batch plants two miles from the construction site were not employed "directly upon the site of the work" pursuant to Davis-Bacon Act); *Building Const. Trades Dept. v. Dept. of Labor,* 932 F.2d 985, 986 (D.C. Cir. 1991) (holding that the statutory language "directly upon the site of the work" restricts coverage of the Davis-Bacon Act to the geographical confines of the actual project site).

plain language, is more restrictive than Nevada's act, and the omission of the words "directly upon" from the language of NRS 338.040 leads to the conclusion that the Nevada Legislature did not intend geographic proximity to be determinative of coverage under Nevada's prevailing wage law. Rather, the adoption of the language "at the site of the work" suggests that the Legislature intended geographic proximity to be just one factor in determining coverage under the statute.

Our reasoning is consistent with the manner in which other states have interpreted their prevailing wage laws. Although each state's statute and/or regulations are not identical to ours, other states have broadly interpreted their prevailing wage laws to encompass activities performed at ancillary locations based upon the failure of their state statutes to use the federal "directly upon" language.[16]

The hearing officer in this case found that the truck drivers were entitled to the prevailing wage pursuant to NRS 338.040 because the activity performed by Granite employees at the borrow pits was part of the construction work necessary to the project. Thus, the borrow pits were a "site of the work." The hearing officer distinguished the facts of this case from the situation where truck drivers simply deliver materials to be stockpiled at a construction site, activity that, according to the Commissioner, is not covered under the Act. Here, the truck drivers were transporting the materials from an ancillary site to the main site, much like forklift operators moving materials from stockpiles to workers within a single site. Based upon the facts of the case and the Labor Commission's interpretation of the statute, the hearing officer found that the truck drivers were entitled to be paid at the prevailing wage rate.

Although we review questions of statutory construction de novo, "an administrative agency charged with the duty of administering an act is impliedly clothed with the power to construe the relevant laws . . . and the construction placed on a statute by the agency charged with the duty of administering it is entitled to deference."[17]

---

[16]*See, e.g., Sharifi v. Young Bros., Inc.,* 835 S.W.2d 221, 223 (Tex. App. 1992) (holding that truck driver delivering materials to a public works construction site was entitled to the prevailing wage); *Superior Asphalt v. Department of Labor,* 929 P.2d 1120, 1123 (Wash. Ct. App. 1997) (holding that truck drivers delivering material and incorporating the materials into the project are entitled to prevailing wages); *Green v. Jones,* 128 N.W.2d 1, 7 (Wis. 1964) (holding that truck drivers whose materials were distributed over the surface of the roadway immediately after their arrival at construction site were entitled to prevailing wages).

[17]*Elliot v. Resnick,* 114 Nev. 25, 32 n.1, 952 P.2d 961, 966 n.1 (1998).

Our review of the record supports the hearing officer's determination. Specifically, the record reveals that, with regard to the Emigrant Pass project, the Suzie Creek Pit used for that project was located only five miles from the nearest end of the project. At the pit, Granite employees crushed materials that were loaded into the dump trucks for transport. The truck drivers then hauled the materials to the actual physical site of the road construction. Upon arrival, the truck drivers unloaded the materials directly onto the roadway for immediate incorporation into the project. The record further reveals that the public works contract for the Emigrant Pass project described the work covered by the contract to include "placing plantmix bituminous surfacing, and placing plantmix bituminous open-graded surfacing." Finally, although the borrow pit used for that project was not solely or exclusively dedicated to the project, it was not a commercial pit, and the State of Nevada had acquired its use for NDOT projects. Thus, we conclude that the hearing officer's determination was supported by substantial evidence, did not violate NRS 338.040, and is therefore entitled to deference. Accordingly, we conclude that the district court erred by granting Granite's petition for judicial review.[18]

## CONCLUSION

We conclude that the scope of NRS 338.040 is broader than that of the federal act and that the truck drivers transporting materials from one part of the construction site to another, where the materials were immediately incorporated into the project, are. entitled to receive prevailing wages. Accordingly, we reverse the district court's order granting the petition for judicial review. On remand, the district court shall deny the petition for judicial review and affirm the hearing officer's decision that the truck drivers in this case are entitled to receive prevailing wages.[19]

---

[18]The parties stipulated that only evidence related to the Emigrant Pass project would be presented at the hearing, but that the hearing officer's decision would apply to all three contracts. Therefore, we need not consider whether the truck drivers delivering materials related to the Battle Mountain and Trinity, Nevada, projects were covered under Nevada's prevailing wage law.

[19]THE HONORABLE A. WILLIAM MAUPIN, Chief Justice, voluntarily recused himself from participation in the decision of this matter.