BEAZER HOMES NEVADA, INC., a Dissolved Nevada Corpo-
ration, Petitioner, *v.* THE EIGHTH JUDICIAL DIS-
TRICT COURT OF THE STATE OF NEVADA, in and for
THE COUNTY OF CLARK, and THE HONORABLE
ALLAN R. EARL, District Judge; THE HONORABLE
NANCY M. SAITTA, District Judge; THE HONORABLE
MICHAEL CHERRY, District Judge; and THE HONOR-
ABLE JESSIE WALSH, District Judge, Respondents, and
WILLIAM ROBINSON, Individually, and the Same on
Behalf of Others Similarly Situated; THE HIGHLAND
GLEN HOMEOWNERS ASSOCIATION; COLEEN
FULLER, Individually, and the Same on Behalf of Oth-
ers Similarly Situated; DANIEL BOLSTER; and
SHARON BOLSTER, Real Parties in Interest.

No. 42034

September 13, 2004                                97 P.3d 1132

*Koeller Nebeker Carlson & Haluck, LLP,* and *Robert C. Carlson
Jr.* and *Megan K. Dorsey,* Las Vegas, for Petitioner.

*Canepa Riedy Rubino & Lattie* and *Scott K. Canepa, Jonathan
G. Lattie,* and *Michael C. Rubino,* Las Vegas, for Real Party in
Interest Highland Glen Homeowners Association.

*Jimmerson Hansen* and *James J. Jimmerson,* Las Vegas, for
Real Party in Interest William Robinson.

*Terry L. Wike,* Las Vegas, for Real Parties in Interest Coleen
Fuller, Daniel Bolster, and Sharon Bolster.

Before BECKER, AGOSTI and GIBBONS, JJ.

# OPINION

By the Court, BECKER, J.:

This is an original proceeding brought by Beazer Homes Nevada, Inc., against various district court judges and real parties in interest William Robinson, The Highland Glen Homeowners Association, Coleen Fuller, Daniel Bolster and Sharon Bolster (collectively Homeowners). Beazer contends that it dissolved as a corporate entity more than two years before the underlying construction defect complaints were filed and that the complaints are therefore barred under NRS 78.585. The Homeowners contend that the statute only bars actions that arise before the date of dissolution and are not commenced within the two-year statutory period. The Homeowners also contend that the word "arise" is a term of art that applies when a claimant knows or should have known of a cause of action against the corporation and that their claims did not arise before Beazer's dissolution. We agree with the Homeowners' interpretation of the statute and accordingly deny the petition.

## FACTS

This case involves four separate construction defect complaints filed against Beazer.[1] Residents of a subdivision known as Belle Esprit filed the first as a class action complaint on December 5, 2001. The second case was filed on November 6, 2002, and involved the Highland Glen development. On March 13, 2003, the third complaint was filed involving the Vista Del Oro community. Also, on March 13, 2003, Daniel and Sharon Bolster filed an individual action regarding their home located on Arco Iris Lane.

At some point in each of these cases, sometimes after years of litigation, Beazer filed a motion to dismiss the complaint because Beazer formally dissolved as a corporate entity on October 14, 1996. Beazer claimed that NRS 78.585 mandates the dismissal of

---

[1]There are a number of Beazer entities involved in the underlying complaints. In addition to Beazer Homes Nevada, Inc., there is Beazer Homes Holdings Corp. and Beazer Homes Holdings, Inc. This opinion deals only with Beazer Homes Nevada.

any complaint against a dissolved corporation brought more than two years after the date of dissolution. Various oppositions were filed citing several reasons for denying the motions to dismiss.[2]

In their oppositions, the Homeowners argued that the statute's plain language made it applicable only to causes of action that arose before the dissolution. Because some homes were built after the dissolution, those homes would not be covered under the statute.[3] As to homes that were built before the dissolution, the Homeowners asserted that the statute was ambiguous because the word "arising" could be reasonably interpreted in two different ways. In its ordinary usage, the term could refer to the time when the defects were created regardless of when the Homeowners discovered the defects. Even so, the Homeowners contended that the word could also be interpreted as a legal term of art because when used in other statutes, such as statutes of limitation, it means the time when a claimant knew or should have known of the existence of the construction defects. If the second meaning is used, the Homeowners contend that a blanket motion to dismiss covering all claims and all litigants would be inappropriate because of the need to resolve the central factual issue—when did the Homeowners learn of their claims.

Four different district judges ruled on the motions. All four denied the motions to dismiss, although for varying reasons.[4] Beazer then filed this writ petition seeking to compel the district courts to dismiss the cases.

## DECISION

In *State of Nevada v. District Court (Anzalone)*, we held that "writ relief is available to review a district court's denial of a motion to dismiss, but only on a limited basis."[5] This court will only

---

[2]Because we conclude that the motions were properly denied on statutory grounds, we do not address the other bases for denying the motions in this opinion.

[3]A dissolved corporation may still do business for the purpose of winding up corporate affairs. Whether Beazer built homes after the filing of the dissolution papers as part of its dissolution activities, or whether it was improperly continuing to do business in violation of the dissolution statutes is contested in the underlying cases below. However, this issue is irrelevant to the issue of statutory interpretation and is not addressed by this opinion.

[4]One district judge concluded that the statute was unambiguous and mandated the dismissal of the underlying complaint, but refused to enforce the statute because the judge thought it would be "bad public policy." This decision was clearly an abuse of discretion. When a statute is clear, unambiguous, not in conflict with other statutes and is constitutional, the judicial branch may not refuse to enforce the statute on public policy grounds. That decision is within the sole purview of the legislative branch.

[5]118 Nev. 140, 147, 42 P.3d 233, 238 (2002).

entertain writ petitions challenging district court denials of motions to dismiss when: "(1) no factual dispute exists and the district court is obligated to dismiss an action pursuant to clear authority under a statute or rule; or (2) an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition."[6] Few such writ petitions are granted and most are summarily denied. Because this case involves significant public policy concerns and raises an important issue of law in need of clarification, however, we conclude that we should exercise our discretion and accept review.

According to Beazer, a writ of mandamus is warranted because the district courts are compelled by law to dismiss the underlying actions. A writ of mandamus is available:

> "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station,"[7] or to control manifest abuse of discretion. A writ of prohibition is the counterpart of the writ of mandamus and is available to "arrest[ ] the proceedings of any tribunal . . . when such proceedings are without or in excess of the jurisdiction of such tribunal."[8]

In order to determine whether the district courts manifestly abused their discretion by refusing to dismiss the complaints, we must consider the meaning of NRS 78.585, which provides that:

> The dissolution of a corporation does not impair any remedy or cause of action available to or against it or its directors, officers or shareholders *arising before its dissolution* and commenced within 2 years after the date of the dissolution. It continues as a body corporate for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against it and of enabling it gradually to settle and close its business, to collect and discharge its obligations, to dispose of and convey its property, and to distribute its assets, but not for the purpose of continuing the business for which it was established.

(Emphasis added.)

"The construction of a statute is a question of law subject to review de novo."[9] "If the plain meaning of a statute is clear on its

---

[6]*Id.*

[7]*Id.* at 146, 42 P.3d at 237 (quoting NRS 34.160).

[8]*Id.* at 146-47, 42 P.3d at 237 (quoting NRS 34.320).

[9]*Diamond v. Swick,* 117 Nev. 671, 674, 28 P.3d 1087, 1089 (2001).

face, then [this court] will not go beyond the language of the statute to determine its meaning."[10] However, when a statute "is susceptible to more than one natural or honest interpretation, it is ambiguous, and the plain meaning rule has no application."[11] In construing an ambiguous statute, we must give the statute the interpretation that "reason and public policy would indicate the legislature intended."[12]

Two issues are presented in this petition. First, whether NRS 78.585 applies to post-dissolution claims, and second, when a claim "arises" for purposes of determining whether a cause of action is a pre-dissolution or post-dissolution claim.

Beazer first contends that NRS 78.585 bars all claims and causes of action, regardless of when they arose, not filed within two years of the date of corporate dissolution because it is a "survival statute." According to Beazer, without the statute, all claims against a dissolved corporation abate at the time of dissolution and the Legislature only intended claims to "survive" past dissolution for a limited period—two years. As all of the underlying complaints were filed after the two-year date, Beazer asserts that the district courts abused their discretion by not dismissing the complaints.[13] The Homeowners assert that the statute's plain language applies only to those claims "arising before" a corporation's dissolution. They argue that the statute does not apply to causes of action that arise after dissolution.

NRS 78.585 is silent with respect to its application to post-dissolution claims. Consequently, we must look beyond the statutory language in determining whether it applies to post-dissolution claims. When a legislature adopts language that has a particular

---

[10]*Rosequist v. Int'l Ass'n of Firefighters,* 118 Nev. 444, 448, 49 P.3d 651, 653 (2002).

[11]*State, Bus. & Indus. v. Granite Constr.,* 118 Nev. 83, 87, 40 P.3d 423, 426 (2002).

[12]*State, Dep't Mtr. Vehicles v. Vezeris,* 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986) (internal quotations and citations omitted).

[13]Beazer also asserts that the Legislature has already addressed and rejected the Homeowners' interpretation of NRS 78.585. Beazer contends that in 2001, the Legislature declined to pass S.B. 89, a bill that would have clarified the application of NRS 78.585 to construction defect claims. Because the bill did not pass, Beazer argues that the Legislature has indicated its intent that NRS 78.585 bar all claims against a dissolved corporation that are not filed within the two-year time period. We disagree. First, the Legislature never considered S.B. 89, as it never came to a vote. Second, the bill involved multiple amendments to various construction defect statutes; only one section addressed dissolved corporations. Under the circumstances, we cannot consider the bill's history because the bill was not rejected by a vote of the Legislature and we cannot ascertain why the bill was not referred out of committee.

meaning or history, rules of statutory construction also indicate that a court may presume that the legislature intended the language to have meaning consistent with previous interpretations of the language.[14] NRS 78.585 has such a history. Statutes similar to NRS 78.585 are generally referred to as ''survival statutes'' due to the history of their development.

At common law, all claims against or by a corporation, whether known, pending or contingent, were abated when a corporation dissolved.[15] The rule produced inequitable results. Creditors or claimants could not require corporate assets to be used first to pay claims once the assets were liquidated or distributed to shareholders. Likewise, debts due to the corporation could not be collected. Legislatures and courts created different remedies to address this situation. Legislatures enacted statutes that continued the corporation's existence for the purpose of winding up the corporation's affairs.[16] Additionally, courts created the ''trust fund'' theory, which permitted litigants to sue former directors and shareholders of a dissolved corporation.[17] According to this theory, directors have a fiduciary duty to see that legitimate claims are paid and that shareholders take assets subject to an equitable lien. Consequently, claimants could file an action naming the directors or shareholders in their official capacities and could recover the value of the assets in the hands of these individuals.[18]

Survival statutes were created to balance the corporation's rights to finalize its business, the creditor's rights to be paid amounts due, the shareholder's rights to receive distributions free of claims, and the claimant's rights to be paid for legitimate harm caused by the corporation. The statutes were part of larger statutory schemes that ideally were supposed to provide a window of opportunity during which the corporation would wind up its affairs, pay creditors, or give notice of a denial of a claim and pursue any legal actions on behalf of the corporation. Claimants were given notice of the dissolution and the period in which any claim must be commenced, and claims commenced after the statutory period were barred. Directors and shareholders of the dissolving corporation were also included in the statutes to ensure that the end of the dis-

---

[14]*See Granite Constr.,* 118 Nev. at 88, 40 P.3d at 426; *Ybarra v. State,* 97 Nev. 247, 249, 628 P.2d 297-98 (1981) (when a statute is derived from another source, we assume the legislature intended it to be interpreted consistent with the construction given to the original source).

[15]D. Gilbert Friedlander & P. Anthony Lannie, *Post-Dissolution Liabilities of Shareholders and Directors for Claims Against Dissolved Corporations,* 31 Vand. L. Rev. 1363, 1366, 1400 (1978).

[16]*Id.; see also* Model Bus. Corp. Act Ann. § 105, at 596 (2d ed. 1971).

[17]Friedlander & Lannie, *supra* note 15, at 1366.

[18]*Id.* at 1367-69.

solution process would complete all actions involving the corporation, directors, and shareholders and that assets could be safely distributed.[19]

In practice, however, such statutes did not accomplish the intended result, primarily because the statutes were part of larger legislative initiatives that dealt only with known claims. The notice provisions of the schemes did not cover unknown or contingent claims and, therefore, the application of the statutes to these claims was questioned, particularly in products liability cases where a cause of action does not exist until an injury occurs.[20] In addition, questions were raised about the statutes' applicability to claims that arose from post-dissolution wind-up activities.[21] As a result, courts have either strictly enforced the ''survival statutes,'' barring all claims if not commenced within the specified time period[22] or have held that the statutes do not apply to post-dissolution or unknown claims.[23]

When read in the context of a survival statute, NRS 78.585 is capable of more than one reasonable interpretation. Moreover, even when considered as a survival statute, it is still subject to differing interpretations. The statute therefore is ambiguous. Because the statute is ambiguous, we turn to the issue of legislative intent.

A review of the legislative history indicates that the current language of NRS 78.585 was enacted during the 1985 legislative session. It was based on Section 105 of the Model Business Corporation Act of 1969.[24]

The purpose of the statute was to reasonably limit the time period in which dissolved corporations, its shareholders, and directors would be liable for claims against the corporation. The legislative records do not reflect whether the Legislature intended the provision to apply to post-dissolution claims.[25]

---

[19]*Id.* at 1401-03.

[20]*Id.* at 1406-07.

[21]*Id.* at 1370, 1408-11.

[22]*E.g., Stone v. Gibson Refrigerator Sales Corporation,* 366 F. Supp. 733 (E.D. Pa. 1973); *Bazan v. Kux Machine Company,* 190 N.W.2d 521 (Wis. 1971) (survival statute applied to both pre- and post-dissolution claims).

[23]*E.g., Levy v. Liebling,* 238 F.2d 505 (7th Cir. 1956); *Donofrio v. Matassini,* 503 So. 2d 1278 (Fla. Dist. Ct. App. 1987) (survival statute does not bar post-dissolution claims).

[24]Hearing on A.B. 634 Before the Senate Comm. on Judiciary, 63d Leg. (Nev., May 30, 1985). For reasons not reflected in the legislative records, the proponents of the amendment used language based on the obsolete 1969 Model Act, rather than the more recent 1984 Model Act. In addition, the proponents failed to advise the Legislature that Section 105 was part of a larger scheme. Consequently, the Legislature did not enact the notice proceedings required by other portions of the 1969 Model Act, a key feature necessary to the rationale behind the proper operation of Section 105.

[25]*Id.*

Because the Nevada statute was patterned after Section 105 of the 1969 Model Act, we may look to the commentary of the 1969 Model Act, and case law interpreting provisions based on the 1969 Model Act, in ascertaining legislative intent.[26] Section 105 states, in pertinent part:

> The dissolution of a corporation . . . shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution.

The official commentary accompanying Section 105 references the history of the survival statutes and notes that every state had enacted statutes permitting actions to be brought by or against a dissolved corporation and preventing actions from abating upon dissolution.[27] The commentary is silent as to whether Section 105, which sets a two-year period for the commencement of an action, applies to all claims, or just pre-dissolution claims.

Courts, in interpreting statutes based upon Section 105 of the Model Act, have taken different directions on whether Section 105 bars all claims, pre- and post-dissolution.[28] Because of the confusion generated by the vague language of Section 105, the Model Act was amended in 1984. The 1984 Model Act eliminated the language of Section 105 and added two new sections, 14.06 and 14.07. Section 14.06 sets forth the procedures for notifying known claimants of the dissolution and sets a time period for filing claims. Claims that are not timely filed are barred. Section 14.07 provides for unknown or contingent claims. Notice of dissolution is given by publication, and claims not filed within a five-year period are barred. The official comments to Section 14.07 indicate that the amendments were designed to provide procedures for dealing with post-dissolution and unknown claims.[29] By giving specific notice for known claims and constructive notice for unknown claims, claimants are warned that a statutory time period is running.[30] The longer time period set for unknown claims was chosen because most post-dissolution claims would arise during that period.[31]

We conclude that the drafters of the Model Act did not intend to bar post-dissolution claims in the 1969 Model Act. In 1984, the

---

[26]*See generally Granite Constr.,* 118 Nev. at 88, 40 P.3d at 426.

[27]Model Bus. Corp. Act Ann. § 105, at 595-96 (2d ed. 1971).

[28]Friedlander & Lannie, *supra* note 15, at 1365.

[29]Model Bus. Corp. Act Ann., § 14.07, at 14-64 to 14-66 (3d ed. Supp. 1996).

[30]*Id.*

[31]*Id.*

drafters determined that post-dissolution claims should be specifically addressed and included them in the Model Act by adding Section 14.07. We can consider these amendments in interpreting NRS 78.585.[32]

Based upon the history of survival statutes, the commentary and case law interpreting the 1969 version of the Model Act and the 1984 amendments to the Model Act, we conclude that the Legislature did not intend to bar post-dissolution claims by adopting NRS 78.585.[33] The Model Act and the survival statutes were intended to provide a fair and equitable method of finalizing corporate affairs. This was also the intent of the Legislature in adopting a modified version of Section 105. This purpose is not served by barring claims that arise after the dissolution, particularly when the claim was caused by post-dissolution wind-up activities of the corporation. It is reasonable to assume that the Legislature would realize that during the course of winding up its business, a corporation might commit acts that would give rise to a claim. If the act occurred on the last day of the two-year period, a plaintiff might have only hours to file a claim or be barred. Such a result would be unreasonable and absurd.[34] A more reasonable construction is that the Legislature intended NRS 78.585 to apply only to pre-dissolution claims and that the finality of post-dissolution claims would be determined by the statutes of repose or limitation applicable to the post-dissolution cause of action.[35]

Next, Beazer argues that even if the statute only applies to pre-dissolution actions, the claims in this case are barred because any defects that allegedly exist were created before the dissolution and the causes of action were filed more than two years after the dissolution. Beazer asserts that the plain meaning of the phrase ''aris-

---

[32]*Matter of Estate of Thomas,* 116 Nev. 492, 495, 998 P.2d 560, 562 (2000); *Woofter v. O'Donnell,* 91 Nev. 756, 762, 542 P.2d 1396, 1400 (1975) (when a former statute is amended or a doubtful interpretation of a former statute rendered certain by subsequent legislation, the amendment is persuasive evidence of what the legislature intended by the first statute).

[33]We note that even if the Legislature intended to bar post-dissolution claims, an action may still be brought after the time bar to the extent that the corporation has undistributed assets, such as a policy of insurance. *See Penasquitos v. Superior Court (Barbee),* 812 P.2d 154 (Cal. 1991).

[34]*Eller Media Co. v. City of Reno,* 118 Nev. 767, 770, 59 P.3d 437, 439 (2002).

[35]Whether the dissolved corporation can be sued under the name of the corporation after the expiration of the two-year period or an action should be brought against directors or shareholders as trustees will depend on the timing of the suit and whether the corporation is still in the process of winding up its affairs. *See* NRS 78.590; NRS 78.600; *Seavy v. I. X. L. Laundry Co.,* 60 Nev. 324, 108 P.2d 853 (1941).

ing before its dissolution'' mandates this conclusion. The Homeowners contend that, when used in the context of statutes of limitation or repose, the term ''arising'' has a special meaning and refers to the time when a person discovered or should have reasonably discovered that they had a cause of action. Under this construction, the Homeowners argue that summary dismissal is not warranted as there is a factual dispute as to when the Homeowners discovered the defects and the claims arose.

The word ''arise'' does have particular meaning in the law. *Black's Law Dictionary* defines ''arise'' as ''[t]o spring up, originate, to come into being or notice; to become operative, sensible, visible, or audible; to present itself.''[36] *Black's* also notes that when applied to a statute of limitations, ''arise'' means when a party has a right to apply to a proper tribunal for relief.[37]

When interpreting statutes of limitation, we have continually recognized that a cause of action does not accrue, and the statute does not begin to run until a litigant discovers, or reasonably should have discovered, facts giving rise to the action.[38] For construction defect cases, the statute of limitations does not begin to run until ''the time the plaintiff learns, or in the exercise of reasonable diligence should have learned, of the harm to the property.''[39] Other states also recognize that an action does not arise until a party knew or should have known that a legal claim existed.[40]

Given the extensive case law in this area, we conclude that when ''arise'' is used in statutes limiting the time to file a cause of action, it is a term of art. Consequently, its use in NRS 78.585 leads us to conclude that the statute is susceptible to two or more reasonable interpretations and is ambiguous. We must then turn to the legislative intent to determine the meaning of the phrase ''arising before dissolution.''

The legislative history reflects no discussion with respect to the meaning of the ''arising before its dissolution'' phrase. The Model

---

[36]*Black's Law Dictionary* 108 (6th ed. 1990) (citing *Bergin v. Temple,* 111 P.2d 286, 289-90 (Mont. 1941)).

[37]*Id.*

[38]*Petersen v. Bruen,* 106 Nev. 271, 274, 792 P.2d 18, 20 (1990).

[39]*Tahoe Village Homeowners v. Douglas Co.,* 106 Nev. 660, 663, 799 P.2d 556, 558 (1990).

[40]*E.g., Dana v. Oak Park Marina, Inc.,* 660 N.Y.S.2d 906 (App. Div. 1997) (claim did not arise until discovery of illegal surveillance); *Hervey v. Normandy Dev. Co.,* 585 N.E.2d 570 (Ohio Ct. App. 1990) (claim arose when plaintiff discovered injuries caused by formaldehyde emissions); *Smith v. Sanders,* 485 So. 2d 1051 (Miss. 1986) (medical malpractice claim arose when plaintiff discovered or reasonably should have discovered cause of action).

Act does not use the term "arise." Instead, it uses the word "existing." However, while courts disagree on whether post-dissolution claims are barred by survival statutes, they agree that claims do not exist until an injury occurs or is discovered.[41]

The 1984 amendments to the Model Act also acknowledge that injuries caused by pre-dissolution activities, but that occur or are discovered post-dissolution, are not pre-dissolution claims. The Official Comment to Section 14.07 states that:

> Earlier versions of the Model Act did not recognize the serious problem created by possible claims that might arise long after the dissolution process was completed and the corporate assets distributed to shareholders. Most of these claims were based on personal injuries occurring after dissolution but caused by allegedly defective products sold before dissolution, but they also involved negligence for which the statute of limitations did not begin to run until the negligence was discovered (e.g., a surgical instrument left inside the patient). The application of the Model Act provision (and of the state dissolution statutes phrased in different terms) to this problem led to confusing and inconsistent results. . . .
>
> . . . .
> The solution adopted in section 14.07 is to continue the liability of a dissolved corporation for subsequent claims for a period of five years after it publishes notice of dissolution. . . . This provision is therefore believed to be a reasonable compromise between the competing considerations of providing a remedy to injured plaintiffs and providing a period of repose after which dissolved corporations may distribute remaining assets free of all claims and shareholders may receive them secure in the knowledge that they may not be reclaimed.[42]

From the language of the commentary and the 1984 amendments, we conclude that the drafters of Section 105 of the 1969 version of the Model Act intended to bar claims that are known or should have been known before dissolution and that were not commenced within two years of the date of dissolution. Claims that are discovered post-dissolution but are based on acts that occurred before dissolution are not barred.

Given our review of the history of the 1969 version of the Model Act, we conclude that the phrase "arising before its disso-

---

[41]*Blankenship v. Demmler Mfg. Co.,* 411 N.E.2d 1153 (Ill. App. Ct. 1980); *Bahl v. Fernandina Contractors, Inc.,* 423 So. 2d 964 (Fla. Dist. Ct. App. 1982); *see also* Friedlander & Lannie, *supra* note 15, at 1408-09.

[42]Model Bus. Corp. Act Ann. § 105, at 14-64 to 14-65 (3d ed. Supp. 1996).

lution'' in NRS 78.585 was intended to be interpreted consistently with its use in the statute-of-limitations context and that therefore a claim does not arise until a litigant discovers, or reasonably should have discovered, the facts upon which a claim is based.

Our conclusion is also supported by other rules of statutory construction. Generally, when a legislature uses a term of art in a statute, it does so with full knowledge of how that term has been interpreted in the past, and it is presumed that the legislature intended it to be interpreted in the same fashion.[43] In addition, when separate statutes are potentially conflicting, we attempt to construe both statutes in a manner to avoid conflict and promote harmony.[44] Here, NRS 78.585, if interpreted in the manner suggested by Beazer, would be in conflict with the statutes of repose applicable to construction defect cases.[45] Because NRS 78.585 was enacted after the construction defect statutes of repose, we assume the Legislature was aware that the provisions of NRS 78.585, if interpreted to bar all claims within two years of dissolution, including unknown, latent or fraudulently concealed defects, would render meaningless the provisions of NRS 11.202, 11.203, 11.204 and 11.205 for dissolved corporations. Thus, dissolved corporations would enjoy a two-year statute of repose, while active corporations, sole proprietorships and partnerships would be subject to six-, eight- or ten-year statutes of repose. Such a result would be absurd.[46] A more harmonious construction, consistent with the public policies underlying both sets of statutes, is our interpretation that NRS 78.585 only applies to claims that are known or reasonably should have been known before dissolution.[47] In such instances, a two-year statute of repose replaces the longer periods in the construction defect statutes, thus balancing the policies of giving finality to the winding-down of a corporation, and providing extensive periods for filing claims for concealed and latent defects.

Having held that the phrase ''arising before its dissolution'' should be interpreted only to apply to claims that were known or

[43]*Application of Filippini,* 66 Nev. 17, 24, 202 P.2d 535, 538 (1949) (when the legislature uses words that have a technical meaning or have received judicial interpretation, courts assume the legislature intended that meaning to apply).

[44]*Allianz Ins. Co. v. Gagnon,* 109 Nev. 990, 993, 860 P.2d 720, 723 (1993).

[45]NRS 11.202-11.205.

[46]*Eller Media,* 118 Nev. at 770, 59 P.3d at 439.

[47]*Presson v. Presson,* 38 Nev. 203, 208-10, 147 P. 1081, 1082-83 (1915) (repeals by implication are not favored and where two or more statutory provisions relate to the same subject matter, they should be construed, if possible, so as to give effect to all).

reasonably should have been known before dissolution, we conclude that the district courts did not abuse their discretion in refusing to dismiss the underlying construction defect claims against Beazer. Substantial factual issues still exist regarding when the Homeowners knew or should have known of their construction defect claims, and these factual issues preclude dismissal of the actions. Accordingly, we deny the petition.

AGOSTI and GIBBONS, JJ., concur.