135 Nev., Advance Opinion 58

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SAM TOLL,<br>Petitioner,<br>vs.<br>THE HONORABLE JAMES E. WILSON,<br>DISTRICT JUDGE; AND THE FIRST<br>JUDICIAL DISTRICT COURT OF THE<br>STATE OF NEVADA, IN AND FOR THE<br>COUNTY OF STOREY,<br>Respondents,<br>    and<br>LANCE GILMAN,<br>Real Party in Interest. | No. 78333<br><br>FILED<br><br>DEC 05 2019<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY _____ S. Young<br>DEPUTY CLERK |

Original petition for a writ of prohibition or mandamus challenging a discovery ruling compelling petitioner to disclose the identity of his sources in a tort action.

*Petition granted in part and denied in part.*

John L. Marshall and Luke A. Busby, Ltd., Reno,
for Petitioner.

Flangas Dalacas Law Group and Gus W. Flangas and Jessica K. Peterson, Las Vegas,
for Real Party in Interest.

McLetchie Law and Margaret A. McLetchie, Las Vegas,
for Amici Curiae The Nevada Press Association, The Reporters Committee for Freedom of the Press, The News Media Alliance, The Online News Association, The Media Institute, The Society of Professional Journalists, and Reporters Without Borders.

19-49275

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, GIBBONS, C.J.:

Almost fifty years ago, the Nevada Legislature passed the news shield statute, NRS 49.275. The current version of the statute protects journalists who are associated with newspapers, periodicals, press associations, and radio and television programs from mandatory disclosure of confidential sources. Since the passage of the statute, the news media has undergone immense changes. Previously, most news outlets disseminated news via physically printed newspapers and magazines or by radio and television broadcasts. Now, in addition to these sources, independent bloggers disseminate news through personal websites. In light of this modernization of the news media, we are asked to determine whether digital media falls within the protections of NRS 49.275. We hold that it does, but we do not address the specific question of whether or not petitioner Sam Toll qualifies for such protection as a blogger. Therefore, we grant the writ petition in part, so that the district court can conduct further proceedings in light of our holding and reconsider whether Toll's blog falls within the protection of the news shield statute. Additionally, we deny the petition in part by holding that the district court did not act arbitrarily or capriciously when it granted the motion for limited discovery.

*FACTS AND PROCEDURAL HISTORY*

Toll runs an online blog that reports on current events in Virginia City, Nevada. Initially, this blog, thestoreyteller.online (*The Storey Teller*), focused on the then-pending recall election of Sheriff Gerald Antinoro. Toll expressed a counter-narrative to local news sources, which

he felt were publishing stories that were critical of Antinoro. After the recall election, Toll continued publishing *The Storey Teller*. In addition to other current events, Toll took an interest in Storey County Commissioner Lance Gilman. Toll wrote several articles that were critical of Gilman and posted them on *The Storey Teller*. Specifically, Toll wrote and posted articles that alleged Gilman did not live in Storey County. In response to these articles, Gilman filed suit, alleging defamation per se against Toll.

After some litigation, Toll filed a special motion to dismiss Gilman's action under the anti-SLAPP statute, NRS 41.660, together with a sworn declaration, claiming that his statements constituted a good faith communication in furtherance of the right to free speech on an issue of public concern. Gilman filed an opposition to this motion together with an affidavit arguing that even if the statements were good faith communications, the action should not be dismissed because he, in turn, could demonstrate with prima facie evidence a probability of prevailing on his defamation claim. The district court held that there was a potentially viable claim under the anti-SLAPP statute. According to the court, Gilman made a prima facie case for a probability of success on the merits as to the falsity of the residency statements and their damaging nature, but he failed to make such a showing for actual malice, which is required to prevail on a defamation claim against a public figure. The district court granted Gilman's motion for limited discovery on whether Toll had actual malice when making these statements. The discovery was limited to information that would help discern whether Toll knew that the statements involving Gilman's residency were false or whether he acted with a high degree of awareness that they were likely false.

Supreme Court
of
Nevada

(O) 1947A

3

Once the limited discovery began, Gilman deposed Toll. During the course of the deposition, Gilman asked, among other things, why Toll believed that Gilman did not live in Storey County. Toll answered that he looked into the zoning of the Mustang Ranch, where Gilman claims to live, and determined that Gilman living there would violate zoning laws. Further, Toll stated that Gilman living in a trailer behind the Mustang Ranch was illogical, given Gilman's wealth. Toll said he asked people whether Gilman lived on the Mustang Ranch property and they told him he did not. Toll stated his sources told him that Gilman would leave the Mustang Ranch and head to Reno every night at 8:00 p.m. Another source allegedly told Toll that Gilman kept his possessions at a different property, where he truly lives. When Gilman asked who these sources were, Toll invoked the news shield statute under NRS 49.275 and refused to provide the identity of his sources. The deposition abruptly ended shortly thereafter.

Gilman filed a motion to compel Toll to reveal his sources with the district court, arguing that the news shield statute does not apply to bloggers. The district court agreed and granted Gilman's motion to compel. The district court held while Toll is a reporter, he did not belong to a press association at the time of his comments. The court further held that Toll's blog did not qualify as a newspaper because it is not printed in physical form and therefore the news shield statute did not afford him any protection. Toll filed a petition for a writ of prohibition or mandamus, challenging that decision as well as the order allowing limited discovery.

## DISCUSSION

"When the district court acts without or in excess of its jurisdiction, a writ of prohibition may issue to curb the extrajurisdictional act." *Las Vegas Sands Corp. v. Eighth Judicial Dist. Court*, 130 Nev. 118, 122, 319 P.3d 618, 621 (2014). Therefore, even though discovery issues are traditionally subject to the district court's discretion and unreviewable by a writ petition, this court will intervene when the district court issues an order requiring disclosure of privileged information.[1] *Id.* We exercise our discretion to review this writ petition because it involves an issue of first impression in need of clarification, and addressing it will promote judicial economy in the proceeding below. *See, e.g., Corp. of the Presiding Bishop, LDS v. Seventh Judicial Dist. Court*, 132 Nev. 67, 70, 366 P.3d 1117, 1119 (2016) (providing that this court may consider writ petitions presenting narrow legal issues concerning issues of significant public policy and that will promote judicial economy).

*The district court erred by granting Gilman's motion to compel*

The district court held that Toll was not protected by NRS 49.275 because he was not associated with a newspaper, periodical, press association, or radio or television station when he made the alleged

---

[1] A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station, or to control an arbitrary or capricious exercise of discretion. NRS 34.160; *Oxbow Constr., LLC v. Eighth Judicial Dist. Court*, 130 Nev. 867, 871, 335 P.3d 1234, 1238 (2014). A writ of prohibition, rather than a writ of mandamus, however, is the appropriate form of relief sought with regard to the order compelling disclosure in this case. *Las Vegas Sands*, 130 Nev. at 122, 319 P.3d at 621. A writ of prohibition is appropriate when the relief is to "arrest the proceedings" and prohibit some exercise of judicial function. NRS 34.320. The judicial function in this case is to compel Toll to reveal his sources, which Toll seeks to prohibit.

 

defamatory statements on his blog. In particular, the district court relied on the notion that because Toll's blog is not physically printed, it cannot be considered a newspaper. We disagree with the district court's reasoning.

We review questions of statutory construction de novo. *Tam v. Eighth Judicial Dist. Court*, 131 Nev. 792, 799, 358 P.3d 234, 240 (2015). "When interpreting a statute, we resolve any doubt as to legislative intent in favor of what is reasonable, as against what is unreasonable." *Desert Valley Water Co. v. State*, 104 Nev. 718, 720, 766 P.2d 886, 886 (1988). "If the plain meaning of a statute is clear on its face, then [this court] will not go beyond the language of the statute to determine its meaning." *Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 579-80, 97 P.3d 1132, 1135 (2004) (alteration in original) (internal quotation marks omitted). In *Desert Valley*, this court reinforced the notion that "[t]he words of the statute should be construed in light of the policy and spirit of the law, and the interpretation made should avoid absurd results." 104 Nev. at 720, 766 P.2d at 887. Applying each of these canons to NRS 49.275, we arrive at the same conclusion—the district court ruled incorrectly.

NRS 49.275 reads, in relevant part, as follows:

> No reporter, former reporter or editorial employee of any newspaper, periodical or press association or employee of any radio or television station may be required to disclose any published or unpublished information obtained or prepared by such person in such person's professional capacity in gathering, receiving or processing information for communication to the public, or the source of any information procured or obtained by such person, in any legal proceedings, trial or investigation . . . .

In trying to ascertain the plain meaning of the statute, the district court attempted to define each word's literal meaning. The first relevant term in this statute is "reporter." The district court found that Toll

was a reporter under this statute, and we agree. The district court defined reporter as "one that reports; one who reports news events; a commentator." Reporter, *Webster's Third New Int'l Dictionary* (2002). Toll reports various public events, opinions, and current news in Virginia City. This qualifies him as a reporter.

The statute also requires that, in order to be protected, the reporter must work for a "newspaper."[2] Because "newspaper" was not defined by NRS 49.275, the district court relied on the definition of newspaper in other statutes as well as in a dictionary. When examining statutory definitions, the district court found that in order to constitute a newspaper, the media source must be "printed."[3] This was consistent with the dictionary definition of newspaper the district court used, which also

---

[2]While a reporter may also be protected if the reporter works for a periodical or radio or television station, because Toll never argued that his blog was a periodical or radio or television station, we do not address those forms here. Nevertheless, the district court did hold that Toll was a member of a press association for the purposes of this statute. The district court held that Toll became a member of the Nevada Press Association in August 2017. However, the district court found Toll was not protected on this basis because he was not a member of the Nevada Press Association when he procured information from his sources. The parties did not brief and we do not decide whether the district court's interpretation of this part of the statute was correct.

[3]NRS 238.020 defines "daily," "triweekly," "semiweekly," "weekly," and "semimonthly" newspapers. It does not define what the contents of a newspaper must consist of, but rather states they must be printed and published.

stated a newspaper is "printed."[4] Therefore, because Toll's blog was not printed in physical form, the court ruled it could not be a newspaper. However, if the district court had pursued the literal meaning of "print" further, it would have found that it could apply to digital media as well as physical form. In one dictionary, "print" is defined as "to make a copy of by impressing paper against an inked printing surface." Print, *Webster's Third New Int'l Dictionary* (2002). However, in another dictionary, "print" is defined as "to display on a surface (such as a computer screen) for viewing."[5] Print, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2020). Because "print" possesses two definitions that are equally applicable to this statute, the district court erred in limiting itself to only one.

We are not required to make "a fortress out of the dictionary" in all instances. *Haw. Carpenters' Tr. Funds v. Aloe Dev. Corp.*, 633 P.2d 1106, 1111 (Haw. 1981) (quoting *Markham v. Cabell*, 326 U.S. 404, 409 (1945) (internal quotation marks omitted)). "Drafters of every era know that technological advances will proceed apace and that the rules they create will one day apply to all sorts of circumstances that they could not possibly envision . . . ." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 86 (2012). Take for instance the Fourth Amendment. When drafted, an unreasonable search was most readily associated with a "common-law trespass." *Kyllo v. United States*, 533 U.S. 27, 31 (2001). But in *Kyllo*, the United States Supreme Court found that

---

[4]The dictionary the district court relied on defined newspaper as "a paper that is printed and distributed." Newspaper, *Webster's Third New Int'l Dictionary* (2002).

[5]"Print" has other definitions in the dictionary besides the two presented, but because they are not applicable here, they are not provided.

thermal imaging—a technological advance the framers could not have logically contemplated—is in fact an unreasonable search without a warrant. *Id.* at 40. Therefore, the Supreme Court recognized a new form of an unreasonable search that was not explicitly included in the common application of the Fourth Amendment. *Id.* (concluding that recognizing thermal imaging as an unreasonable search is taking "the long view [ ] from the original meaning of the Fourth Amendment forward").

The same principle applies here. NRS 49.275 has not been amended since 1975. While the drafters of NRS 49.275 knew what a newspaper was, they likely did not contemplate it taking digital form. But just because a newspaper can exist online, it does not mean it ceases to be a newspaper. To hold otherwise would be to create an absurd result in direct contradiction to the rules of statutory interpretation. In *Kyllo*, the court considered technological advancements and arrived at the conclusion that one can "search" in more than one way. *See* 533 U.S. at 31-33. We consider technological advancements as well and arrive at the conclusion that one can "print" in more than one way. While we decline to resolve whether or not a blog falls under the definition of a newspaper, we conclude that a blog should not be disqualified from the news shield statute under NRS 49.275 merely on the basis that the blog is digital, rather than appearing in an ink-printed, physical form. Therefore, we conclude that the district court erred by granting Gilman's motion to compel.

*The district court did not act arbitrarily or capriciously when it granted the motion for limited discovery*

Toll makes an alternative argument that the district court erred in granting Gilman's motion for limited discovery because Gilman failed to make a prima facie showing in his opposition to Toll's anti-SLAPP motion to dismiss. We disagree.

SUPREME COURT
OF
NEVADA

(O) 1947A

NRS 41.660(4) provides that "the court shall allow limited discovery" when a party needs access to information held by the opposing party to meet or oppose the plaintiff's burden under the second prong of the anti-SLAPP statute. We review the district court's determination whether such discovery is necessary for an abuse of discretion. *Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev. 224, 228, 276 P.3d 246, 249 (2012) ("Discovery matters are within the district court's sound discretion, and we will not disturb a district court's ruling regarding discovery unless the court has clearly abused its discretion."). Normally, we do "not exercise our discretion to review discovery orders through petitions for extraordinary relief, unless the challenged discovery order is one that is likely to cause irreparable harm." *Id.*

In this case, the district court did not arbitrarily and capriciously exercise its discretion by ordering limited discovery so that Gilman could ascertain whether Toll made his statements with actual malice. Without knowing what evidence Toll relied on when he asserted that Gilman did not live in Storey County, it could be difficult to determine whether Toll acted with actual malice. Thus, limited discovery may be appropriate.

Given that the district court erred by holding that a blog could not be considered a newspaper on the grounds it exists in digital form, we grant this petition in part and instruct the district court to conduct further proceedings to determine whether Toll's blog qualifies for protection under the news shield statute. Furthermore, because the district court did not arbitrarily or capriciously exercise its discretion in ordering discovery in accordance with NRS 41.660(4), we deny that portion of the writ. We direct

the clerk of this court to issue a writ of prohibition instructing the district court to vacate its order granting Gilman's motion to compel and to reconsider the motion in light of this opinion.

_____, C.J.
Gibbons

We concur:

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver