FRANK W. LAMB, APPELLANT, v. LEROY CORPORA-
TION, A CORPORATION, RESPONDENT.

No. 5694

April 30, 1969                              454 P.2d 24

*Singleton, De Lanoy, Jemison & Reid,* of Las Vegas, for Appellant.

*Foley Brothers,* of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

The creditor of a corporation seeks to recover money due him from a separate corporate entity which purchased the assets of the debtor corporation in exchange for stock. Two theories of recovery are advanced by the creditor; that the transaction between the corporations constituted a de facto merger, and that a constructive fraud was practiced upon the creditor of the selling corporation, since the purchasing corporation was a party to the diversion of a trust fund. The district court rejected the creditor's plea for relief and this appeal followed. We have concluded that the district court ruled correctly and affirm.

Frank W. Lamb commenced an action against National

Insurance Agency of Nevada and Leroy Corporation on an indebtedness owing him by National Insurance Agency in the amount of $15,087.87. This debt had been assumed in writing by Nevada Land and Mortgage of which Nevada Insurance Agency was a wholly owned subsidiary. The sole issue at trial was whether Leroy was liable for the debts of Nevada Land and Mortgage. Leroy did not expressly assume to pay such debts. Its liability therefor is asserted to rest upon the manner in which Leroy purchased the assets of Nevada Land and Mortgage (N.L.M.).

N.L.M. was engaged in a variety of property transactions. Prior to 1965 it had suffered financial reverses causing its Board of Directors to contemplate merger, consolidation, or a sale of assets. Negotiations with several business enterprises ensued. On April 9, 1965 the Board adopted a resolution entitled "A Proposed Corporate Merger" which set forth details for a proposed merger with Leroy. The stockholders of N.L.M. gave their consent (NRS 78.470). However Leroy, through its president and majority stockholder, Leo Frey, rejected N.L.M.'s offer to merge since Leroy did not wish to be associated in the public eye with N.L.M., whose corporate image was less than untarnished. Leroy did, however, counter with an offer to purchase the assets of N.L.M., and a "Sale of Assets Agreement" was entered into on May 21, 1965.

Pursuant to that agreement assets of N.L.M. worth from $155,000 to $165,000 were transferred to Leroy in exchange for 36,158 shares of Leroy stock after a three-for-one stock split of Leroy. The 36,158 shares were valued at approximately $700,000. A single certificate for those shares was issued by Leroy and delivered to N.L.M. The Board of Leroy was increased from three to five, two members being selected by N.L.M.[1]

Soon after the consummation of this transaction, N.L.M. requested Leroy to transfer N.L.M.'s 36,158 shares of Leroy stock to the stockholders of N.LM. That request was honored by Leroy and the stock issued as directed. Thereafter, the stockholders of N.L.M. ratified the sale of assets to Leroy and voted to dissolve the corporation. There is nothing in the record to suggest that ratification of the sale by the stockholders of N.L.M. was contingent upon reissuance of Leroy shares to

---

[1]Although the agreement called for the sale of "all" assets, two items of real property were not transferred since Leroy did not want them. N.L.M. also retained several thousand dollars cash and Leroy assumed that such retained cash was used to pay the debts of N.L.M.

such stockholders. Dissolution was accomplished without having satisfied the debt owing Lamb.

1. A consummated agreement of merger or consolidation imposes upon the surviving corporation all liabilities of the constituent corporations so merged or consolidated. NRS 78.495. The rule is otherwise when the transaction is a bona fide sale of assets. West Texas Refining Co. v. Commissioner, 68 F.2d 77, 81 (10 Cir. 1933). The creditor, Lamb, urges that the transaction between N.L.M. and Leroy was at least a de facto merger.

We do not agree, since the sales agreement did not contemplate a merger or consolidation of the two corporations. Merger is " '. . . a combination whereby one of the constituent companies remains in being—absorbing or merging in itself all the other constituent corporations.' " Rath v. Rath Packing Co., 136 N.W.2d 410, 415 (Iowa 1965).

Since such a combination did not here occur, the consequences of merger or consolidation should not be visited upon Leroy. Leroy specifically did not want to combine. The powers of N.L.M. were not transferred to Leroy. Each company maintained a separate identity, and N.L.M. was later dissolved in accordance with statutory procedures therefor.

2. As already stated it is the general rule that when one corporation sells all of its assets to another corporation the purchaser is not liable for the debts of the seller. West Texas Refining Co. v. Commissioner, 68 F.2d 77 (10 Cir. 1933); Ozan Lumber Co. v. Davis, 284 F. 161 (D.C.Del. 1922). To this rule there are four well recognized exceptions: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction is really a consolidation or a merger; (3) when the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction was fraudulently made in order to escape liability. for such debts. West Texas Refining Co. v. Commissioner, supra. We have already considered and rejected the applicability of the second exception. It is conceded that exceptions one and three are not involved. However, the appellant does urge that exception number four is dispositive of this case since the stock of the purchasing corporation was ultimately delivered to the stockholders of the selling corporation, leaving the latter without means to respond to its creditors. In this

circumstance, he contends that the transferee corporation is liable for the debts of the transferor. Jennings Neff & Co. v. Crystal Ice Co., 159 S.W. 1088 (Tenn. 1913). Indeed, the appellant insists that the purchaser is liable to creditors of the selling corporation whenever the transfer of assets is in exchange for stock, and it is immaterial whether the stock is issued to the selling corporation or to its stockholders. American Railway Express Co. v. Commonwealth, 228 S.W. 433 (Ky.App. 1920); City of Altoona v. Richardson Gas & Oil Co., 106 P. 1025 (Kan. 1910).

When the purchasing company issues its stock in the first instance to the stockholders of the selling corporation there exists a solid basis for finding creditor liability. In that circumstance ". . . the purchasing company is bound to know that the property of the selling corporation 'ought not to be distributed among the stockholders to the exclusion of creditors,' and that hence it is a party to a diversion of the trust fund and holds it subject to the payment of debts, since 'it cannot be called a bona fide purchaser of the property, as against existing creditors.' " 15 Fletcher, Private Corporations, p. 210. When this happens, constructive fraud may appropriately be asserted against the purchasing company, at least where no other provision has been made for the satisfaction of creditors.

A more difficult case for creditor liability is presented where, as here, the purchasing corporation issues its stock directly to the selling corporation, since a valuable asset, the stock, is possessed by the seller and is subject to the claims of its creditors. In this situation case authority is in conflict. The American Railway Express Co. case found creditor liability. However, in that case the court appears to have been particularly influenced by the fact that the selling corporation was a foreign corporation and all of its assets in the forum state had been taken from it by the sale. 228 S.W. at 441. Furthermore, the purchasing corporation had been organized for the express purpose of becoming the owner of the seller. Id. at 434. And, in City of Altoona v. Richardson Gas & Oil Co., supra, the circumstances were such as to allow the court to treat the arrangement as a de facto merger. 106 P. at 1026.

Other courts have held that the mere issuance of stock of the buying corporation in payment for assets of the selling corporation does not, of itself, subject the former to the debts of the latter. Ozan Lumber Co. v. Davis, 284 F. 161 (D.C.Del. 1922), is illustrative. These courts hold to the view that the

creditor may not complain except on the ground that the consideration was not fair or adequate, and it is immaterial whether the consideration is in the form of cash or stock.

With these cases in mind we turn to examine the matter at hand. The transaction was a bona fide sale of assets in exchange for stock. A merger or consolidation of the two companies did not result. The consideration was more than adequate. It was no part of the sales agreement that Leroy was to pay the consideration to the stockholders of N.L.M.; in fact the stock was issued directly to N.L.M. itself. This exchange effectively terminated the relationship of the two corporations and completely executed the terms of the sales agreement. The subsequent transfer of N.L.M.'s 36,158 shares of Leroy stock to the stockholders of N.L.M. was a new and different transaction and does not, in our view, relate back to the original sale in order to infuse it with elements of fraud, constructive or otherwise. Leroy was obliged to honor N.L.M.'s request and transfer the shares as directed. For these reasons this case is controlled by the general rule that when one corporation sells all of its assets to another corporation the purchaser is not liable for the debts of the seller.

Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.