OPINION RENDELL, Circuit Judge: At first glance this case appears exceedingly complex—with its tangle of debtors, creditors, parents, subsidiaries, alter egos, and complex international corporate transactions. But when one cuts through this morass, the question at the center of this case is quite simple: can a transfer by a non-debtor be a “fraudulent transfer” under the Delaware Uniform Fraudulent Transfer Act (“DUFTA”)? The role of a federal court in this situation is to predict how the Supreme Court of Delaware would answer this question. We are constrained to conclude that a transfer by a non-debtor cannot be a “fraudulent transfer” under DUFTA. While we do not condone the debtor’s and the transferor’s actions, we must conclude that Crystallex has failed to state a claim under DUFTA.[1] I, Background A. The Parties and Related Entities Appellant Crystallex International Corp. (“Crystallex”), a Canadian gold producer, owned the rights to Las Cristinas gold reserve in the Bolivarian Republic of Venezuela (“Venezuela”). In 2011, Venezuela nationalized its gold mines and expropriated Crystallex’s rights to Las Cristinas. Crystallex subsequently initiated an arbitration proceeding against Venezuela before the World Bank. It claimed that, by expropriating Crystallex’s rights to Las Cristinas, Venezuela had violated a bilateral investment treaty with Canada. Venezuela was the sole defendant in the arbitration proceeding and the only entity claimed to be obligated to Crystallex for any resulting judgment. The arbitrators found that Venezuela had breached the treaty and awarded Crystallex $1,202 billion. Crystallex Int’l Corp. v. Bolivarian Rep. of Venezuela, 244 F.Supp.3d 100, 107 (D.D.C. 2017). The District Court for the District of Columbia confirmed the arbitration award, in accordance with the Federal Arbitration Act, 9 U.S.C.A. § 1, et seq. Crystallex, 244 F.Supp.3d at 122. Venezuela owns 100% 'of the shares of Petróleos de Venezuela, S.A. (“PDVSA”). PDVSA is alleged to be Venezuela’s alter ego, a “national oil company through which Venezuela implements government policies at home and abroad.” A31. PDVSA owns 100% of PDV Holding, Inc. (“PDVH”), which in turn owns 100% of CITGO Holding, Inc. (“CITGO Holding”). CITGO Holding owns 100% of CITGO Petroleum Corporation (“CITGO Petroleum”). PDVSA is a foreign corporation based in Venezuela. PDVH, CITGO Holding, and CITGO Petroleum are Delaware corporations. B. Litigation Against PDVH Crystallex brought this suit against PDVH[2] in the District of Delaware, alleging that PDVH had violated DUFTA’s prohibition against fraudulent' transfers.[3] According to Crystallex, Venezuela realized that it was “facing billions of dollars in liability from the numerous arbitration proceedings arising from its repeated expropriation of foreign investments,” including the Crystallex proceeding. A30. “On numerous occasions, Venezuelan, government officials stated publicly that Venezuela would refuse to pay any anticipated arbitral award against it and would proactively thwart efforts to enforce such awards.” A40. “As part of [its] plan to thwart enforcement,” Venezuela orchestrated a series of debt offerings and asset transfers among PDVSA, PDVH, CITGO Holding, and CITGO Petroleum. A30. Specifically, Venezuela sought to “monetize its interests in CITGO [Petroleum],” its' largest United States-based asset, and repatriate the proceeds. A40. To this end, Venezuela “enlisted its alter ego PDVSA,” who. in turn “directed its . wholly-owned subsidiary PDVH to direct its wholly-owned subsidiary CITGO Holding to issue $2.8 billion in debt.”[4] A31. CITGO Holding, in turn, transferred the proceeds from the issuance of debt to its parent PDVH as a shareholder “dividend.” A31. PDVH then declared a dividend of the same amount to its parent PDVSA, a Venezuelan corporation and the alleged alter ego of Venezuela, thereby repatriating the money to Venezuela and shielding it from an enforcement action in the United States. Id. These transactions formed the basis of Crystallex’s DUFTA claim against PDVH. As a result of these transfers, “nearly $2.8 billion in ‘dividends’ ended, up in the hands of PDVSA (and therefore Venezuela) outside the United States where they could hot be reached by Venezuela’s creditors.” A43. Under DUFTA, A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation ... [w]ith actual intent to hinder, delay or defraud any creditor of the debtor. 6 Del. C. § 1304. C. District Court Denies PDVH’s Motion to Dismiss PDVH moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). It argued that Crystallex had failed to state a claim under DUFTA because the allegedly fraudulent-transfer was not made “by a debtor”—that is, by Venezuela—as required by the statute. 6 Del. C. § 1304(a).[5] The District Court denied PDVH’s motion to dismiss, concluding that there had indeed been a transfer “by a debtor.” Crystallex Int’l Corp. v. Petróleos de Venezuela, S.A., 213 F.Supp.3d 683 (D. Del. 2016). In reaching this conclusion, the District Court first correctly stated that Crystallex’s only potential debtors were Venezuela and its alleged alter, ego PDVSA. Crystallex, 213 F.Supp.3d at 691. Therefore, “in the narrowest sense of the term,” none of the transfers were “directly undertaken ‘by’ the ‘debtor.’ ” Id. Nonetheless, the District Court found that PDVH—a “non-debtor transferor”—could be liable under DUFTA for its dividend transfer to PDVSA. Id. at 693. In support of this conclusion, the District Court noted that “DUFTA includes within its ambit ‘indirect ... mode(s) ... of disposing of- or parting with an asset or an interest in an asset.’ ” Id. at 691 (quoting 6 Del. C. § 1301(12)). It also cited Merriam-Webster’s definition of the word “by,” which includes “through the agency or instrumentality of’ and “on behalf of.” Id. Given the alleged “extensive, if not dominating, involvement” of the debtor Venezuela, the PDVH transfer was executed by an “instrumentality” of the debtor or on its “behalf.” Id. Therefore, the District Court reasoned, the transfer from PDVH to PDVSA was “a transfer made in every meaningful sense ‘by a debtor,’” despite the fact that PDVH was not in fact a debtor. Id. at 691-92. Finally, the District Court noted that its holding was in line with the purpose of DUFTA, which “broadly provides for the application of ‘the principles of law and equity.’ ” Id. at 692. PDVH filed a motion to certify the District Court’s Order for interlocutory review pursuant to 28 U.S.C. § 1292(b), arguing that the District Court' incorrectly concluded that DUFTA extends to transfers by non-debtors. After "briefing and oral argument, the District Court granted PDVH’s motion, and we accepted PDVH’s petition for permissive review. II. Analysis[6] While we acknowledge the appeal to equity that the. District Court and our dissenting colleague have expressed, we are compelled to conclude that we must reverse the District Court’s Order denying PDVH’s motion to dismiss, because transfers by non-debtors are not fraudulent transfers under DUFTA as it has been interpreted by the Delaware courts. To survive a motion to dismiss, a plaintiff must allege each “required element” of his claim. Phillips v. Cty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). The DUFTA statute reads, in relevant part: A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor’s claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the- obligation ... [w]ith actual intent to hinder, delay or defraud any creditor of the debtor. 6 Del. C. § 1304 (emphasis added). In order to withstand a motion to dismiss a claim under DUFTA, therefore, Crystallex must successfully plead three things: (1) a transfer, (2) by a debtor, (3) with actual intent to hinder, delay, or defraud a creditor. This ease turns on the meaning of the second element, “by a debtor.” Based on the decisions of the Delaware Chancery Court and other Delaware state law principles, we conclude that the transfer by non-debtor PDVH to PSVHA was not a fraudulent transfer under DUFTA. “Our role in diversity cases is to apply state law.” Sheridan v. NGK Metals, 609 F.3d 239, 254 (3d Cir. 2010). “A federal court under Erie is bound to follow state law as announced by the highest state court.” Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007). “[I]f that state’s highest court has not provided guidance, we are charged with predicting how that .court would resolve the issue.” In re Energy Future Holdings Corp., 842 F.3d 247, 253-54 (3d Cir. 2016). In doing so, we must give “due deference” to the intermediate state courts’ rulings. In re Makowka, 754 F.3d 143, 148 (3d Cir. 2014). “This standard places a significant constraint on us[.]” Sheridan, 609 F.3d at 254 (quoting Jewelcor Inc. v. Karfunkel, 517 F.3d 672, 676 n.4 (3d Cir. 2008)). “Unlike our role in interpreting federal law, we may not ‘act as a judicial pioneer’ in a diversity case.” Sheridan, 609 F.3d at 254 (citation omitted). Crystallex alleges that PDVH’s transfer to PDVSA was part of a scheme, designed in part by Venezuela, to transfer $2.8 billion out of the United States, placing it out of the reach of Crystallex or other creditors attempting to enforce a judgment against Venezuela. It alleges that, “[together, [Venezuela, through its alter ego] PDVSA, PDVH, and CITGO Holding ... devised a scheme” to liquidate the value of CITGO Petroleum, Venezuela’s largest United States-based asset. A31, A41. Pursuant to this “strategy concocted by PDVSA, PDVH, and CITGO Holding,” CITGO Holding would transfer billions of dollars to PDVH “where, in turn, those funds would be paid as a dividend to PDVH’s direct parent[,] ... moving the funds to PDVSA outside the United States.” A41. But more important is what Crystallex does not allege. It does not allege that PDVH is a debtor or otherwise hable for the arbitral judgment Crystallex has obtained against Venezuela. Absent is any allegation that Venezuela or PDVSA—the only potential debtors[7]—transferred any property. Instead, Venezuela, through its alleged alter ego PDVSA, received the $2.8 billion in question. The transfer was clearly alleged to have been by the non-debtor PDVH. As an initial matter, this transaction seems to lack the principal harm visited upon creditors in a fraudulent transfer, namely the debtor’s alienation of an asset otherwise available to pay its debts. Here, the alienation complained of was geographical. It was not technically a transfer by the debtor but a transfer to the debtor which, by virtue of international law, resulted in the assets being out of the reach of creditors. This situation is not covered, or contemplated, by DUFTA. The allegations in the complaint raise two questions. First, can a transfer by a non-debtor such as PDVH constitute a fraudulent transfer under DUFTA? If not, we then ask whether the allegations in the complaint, whereby the debtor Venezuela devised the scheme, can state a claim for relief under DUFTA based on either an aiding and abetting or a conspiracy theory. The answer to both questions is no. A. Non-Debtor Liability Under DUFTA Although the Delaware Supreme Court has not had the opportunity to consider whether non-debtor transferors can commit fraudulent transfers under DUFTA, the Chancery Court has answered that question in the negative. See Edgewater Growth Capital Partners v. H.I.G. Capital, Inc., C.A. No. 3601-VCS, 2010 WL 720150, at *2 (Del. Ch. Mar. 3, 2010) (“By its own-terms, the Delaware Fraudulent Transfer Act only provides for a cause of action by a creditor against debtor-transferors or transferees.”); In re Wickes Trust, No. Civ. A. 2515-VCS, 2008 WL 4698477, at *7-8 (Del. Ch. Oct. 16, 2008) (“in order to have a fraudulent transfer claim, one must have a valid claim against the person .... alleged to have fraudulently made the transfer”).[8] The Chancery Court has also rejected fraudulent transfer claims against non-debtor transferors under analogous provisions in the federal Bankruptcy Code, 11 U.S.C.A. § 548. See Spring Real Estate, LLC v. Echo/RT Holdings, LLC, C.A. No. 7994-VCN, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016), aff'd sub nom. Klauder v. Echo/RT Holdings, LLC, No. 133, 2016 WL 7189917 (Del. Dec. 12, 2016) (rejecting a fraudulent conveyance claim against a non-debtor subsidiary of the debtor parent company). See also In re Plassein Int’l Corp. v. B.A. Capital Co., 366 B.R. 318, 326 (Bankr. D. Del. 2007), aff'd. 388 B.R. 46 (D. Del. 2008), aff'd 590 F.3d 252 (3d Cir. 2009) (dismissing state and federal fraudulent transfer claims because the allegedly fraudulent transfer was made by a non-debtor). Although Crystallex’s claim arises under DUFTA, not the Bankruptcy Code, these decisions are instructive. The relevant DUFTA and Bankruptcy Code provisions are nearly identical, and Delaware courts^ have interpreted and applied them uniformly. Compare 11 U.S.C. § 548 with 6 Del. C. §§ 1302-1306. “Because Delaware has adopted the Federal UFTA, a statute that was itself 'modeled on Section 548 of the'Bankruptcy Code ... Delaware courts generally recognize that our state and the federal fraudulent transfer statutes’ principles are substantially the same.” Ki-Poong Lee v. So, C.A. No. N14C-08-173 PRW, 2016 WL 6806247, at *3 (Del, Super. Ct. Nov. 17, 2016). See also In re PHP Healthcare Corp., 128 Fed.Appx. 839, 847 (3d Cir. 2005) (“We need not discuss the provisions of the Delaware Fraudulent Transfer Act ... because they are substantially the same as the relevant parts ,of the Bankruptcy Code”). DUFTA is “virtually a carbon copy of the fraudulent transfer law under the Bankruptcy Code” and “the result under Delaware law should be the same as the outcome under the Bankruptcy Code.” In re Trace Int’l Holdings, Inc. v. Dow Chemical Co., 287 B.R. 98, 105 n.5 (Bankr. S.D.N.Y. 2002). Just as the Chancery Court has found that a. non-debtor transferor is not liable under the Bankruptcy Code, a non-debtor trans-feror is not liable under DUFTA. Here, Crystallex has failed to allege that PDVH is a debtor or that PDVH would otherwise be liable to Crystallex for any judgment against Venezuela. The Dissent notes that no Delaware case has specifically “held that non-debtor transferors are immune from liability under the Act.” Dissenting Op. at 92. But the question here is not one of immunity. Rather, we must decide whether a transfer by a non-debtor fits ■ within the statutory definition of a fraudulent transfer in the first place. Because relevant Delaware precedent makes it clear that the answer to this question is “no,” non-debtor PDVH simply could not have committed a fraudulent transfer in violation of DUFTA. In addition, reading “by a debtor” broadly enough to allow a non-debtor subsidiary tránsferor (here, PDVH) to be liable, simply because its parent company (here, Venezuela, through its alter ego PDVSA) is a debtor, would underminé a fundamental precept of Delaware corporate law: parent and subsidiary corporations are separate legal entities. As the District Court correctly noted, “Delaware public policy does not lightly disregard the separate legal existence of corporations.” Crystallex, 213 F.Supp.3d at 690 (quoting Spring Real Estate, 2016 WL 769586, at *3 n.35). “Persuading a Delaware court to disregard the corporate entity is a difficult task.” Wallace ex rel. Cencom Cable Income Partners II v. Wood, 752 A.2d 1175, 1183, (Del. Ch. 1999) (internal quotation marks omitted). Delaware law “tends to accord dignity to legal entities except in cases in which the traditional law of. piercing the corporate veil is met.” Hart Holding Co. v. Drexel Burnham Lambert Inc., C.A. No. 11514, 1992 WL 127567, at n.11 (Del. Ch. 1992). Such cases are rare, and include situations where the subsidiary is a mere “alter ego” of the parent. See Mabon, Nugent & Co. v. Texas Am. Energy Corp., CIV A No. 8578, 1990 WL 44267 (Del. Ch. 1990) (describing possible grounds for piercing the corporate veil under Delaware law). Crystallex alleges in great detail that PDVSA is Venezuela’s alter ego. But that is beside the point. Tellingly, it does not allege that PDVH is Venezuela’s or PDVSA’s alter ego or any other basis on which we could “pierce the corporate veil,” Absent such allegations, we are unwilling to. disregard PDVH’s distinct corporate identity and attribute to it the actions of the debtor. Crystallex’s remaining arguments for interpreting DUFTA to cover non-debtor transferors are also of no avail. First, Crystallex urges that non-debtor transfer-ors are covered by DUFTA because § 1307(c) of the statute shows that the legislature contemplated such liability. Under § 1307(c), “a creditor shall have no right to relief against any trustee, attorney or other advisor who has not acted in bad faith on account of any transfer.” 6 Del. C. § 1307(c). According to Crystallex, the inverse must be true: non-debtors—namely, trustees, attorneys, or other advisors— who have acted in bad faith can be liable under DUFTA. This argument fails. First, this section of the statute does not affirmatively authorize suits against non-debtors. Second, even if it did authorize such suits, Crystallex does not allege that PDVH was a trustee, attorney, or other advisor. Moreover, we question the continued validity of this portion of the statute. As PDVH argues, since its enactment in 1999, § 1307(c) may have been rendered “surplusage” by Delaware case law finding that DUFTA only provides a cause of action against debtors, thereby shielding advisors from liability. See Reply Br. for Appellant at 21 (citing Edgewater, 2010 WL 720150, at *2). Similarly, Crystallex argues to no avail that § 1308 of the statute supports non-debtor liability. Section 1308 provides that transferees are not liable under the statute if they received title in good faith for equivalent value. 6 Del. C. § 1308. Crystal-lex seems to suggest that since good faith transferees are not liable under the statute, relief should be afforded against bad faith non-debtor transferors. See 6 Del. C. § 1308. But this is a non sequitur. Moreover, there simply is no support for subjecting bad faith non-debtor transferors to liability under the Delaware case law. We are not permitted to “act as a judicial pioneer”- when applying state law, and are therefore unwilling to expand.the statute to. cover bad faith non-debtor transferors. Sheridan, 609 F.3d at 253. Nor are we persuaded by Crystallex’s claim that courts in other jurisdictions have ftiund non-debtor transferors liable under similar fraudulent transfer statutes. Crystallex cites only two such cases: Gutierrez v. Givens, 1 F.Supp.2d 1077 (S.D. Cal. 1998), and In re Carousel Candy Co. v Weber, 38 B.R. 927 (E.D.N.Y. 1984). Those case are not binding on us, nor would they be binding on the Delaware Supreme Court. Regardless, these cases are inappo-site. The defendant bank in Gutierrez did not argue that it was not liable under the California fraudulent transfer statute, Cal. Civil Code § 3439, based on its non-debtor status. Instead, it argued that the fraudulent transfer claim against it should be dismissed because' the main remedy available under the statute did not apply to a non-transferee such as the bank. Gutierrez, 1 F.Supp.2d at 1087. The court rejected this argument, finding that if the bank was liable under the statute, the bank could, still be subject to alternative remedies. Id.. It did not have to determine whether the non-debtor bank could be liable under the statute. Carousel is also distinguishable. In that case, the court allowed a fraudulent transfer claim to proceed against a non-debtor, but it based its decision on the fact that the transferor was the debtor’s attorney, owed, the debtor a fiduciary duty, and “was de facto in control of the debtor” at the time of the transfer. 38 B.R. at 938. Those facts are not present here, nor does the Delaware case law hint at broadening the concept of “by a debtor” in such a fact pattern. Even if w;e were to consider out-of-jurisdiction cases, .the majority of courts that have considered the issue have rejected non-debtor transferor liability. See, e.g., Ferri v. Powell-Ferri, No. MMXCV116006351S, 2012 WL 3854425 at *4 (Conn. Super. Ct. July 30, 2012) (striking a fraudulent transfer claim against a non-debtor transferor and finding no support for the position that “a third party can be liable for making a fraudulent transfer as to a party to whom the third party is not a debtor”); Folmar & Assoc’s LLP v. Holberg, 776 So.2d 112, 118 (Ala. 2000), overruled on other grounds by White Sands Grp., LLC v. PRS IILLC, 32 So.3d 5 (Ala. 2009) (rejecting a fraudulent transfer claim and finding “no case in which the provisions of the Alabama Uniform Fraudulent Transfer Act have been extended to apply to transferors other than the debtor”); cf. Healthco Int’l, Inc., 201 B.R. 19, 21 (Bankr. D. Mass. 1996) (finding that the transfers at issue were “not transfers by the Debtor and hence are immune from fraudulent transfer attack” under the federal Bankruptcy Code). We also decline to rely on the broader dictionary definition of “by”—which includes “through the agency or instrumentality of’ and “on behalf of’—to extend DUFTA to cover non-debtor transferors. First, we do not read the allegations in the complaint to actually aver that PDVH acted as an agent or “on behalf of’ Venezuela. Second, we need not resort to dictionary definitions where the Delaware courts have clearly indicated that “by a debtor” means that the debtor itself must have made the transfer. Finally, we reject Crystallex’s argument that DUFTA’s “broad remedial purpose” should cause us to declare the transfer fraudulent. Br. for Appellant, 37. We also decline to find the non-debtor transfer here fraudulent based on equitable considerations, as our dissenting colleague suggests. Dissenting Op. at 93-94. It is true that “DUFTA grants a court ‘broad latitude’ for the court to craft a remedy,” Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC, C.A. No. 6546-VCL, 2014 WL 5192179 (Del. Ch. Oct. 10, 2014) (citation omitted) (emphasis added), and “leaves considerable leeway for the exercise of equitable discretion” in doing so. In re Mobilactive Media, LLC, C.A. No. 5725-VCP, 2013 WL 297950 (Del. Ch. Jan. 25, 2013). See also 6 Del. C. § 1307(a)(3)(e) (courts may invoke equitable principles to craft “[a]ny [] relief the circumstances may require”). But having broad latitude to craft a remedy for a DUFTA violation does not necessarily mean we have broad latitude to determine what fits within the contours of the statute in the first place. Moreover, the Chancery Court is a court of equity. See 10 Del. C. § 341 (“The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity.”). It has had the opportunity to conclude, as an equitable matter, that DUFTA covers transfers by non-debtors. But, so far, it has not. Delaware courts have closed the door to non-debtor trans-feror liability under the state statute, and we are not free to open it. Sidestepping the “by the debtor” requirement, Crystallex looks to other elements of the statute in an attempt to cover the transaction. First, Crystallex focuses on the “transfer” element. It points to the statute’s broad definition of “transfer,” which includes both direct and indirect transfers, and argues that the indirect transfer here is therefore covered by the statute. See 6 Del. C. § 1301(12) (“ ‘Transfer’ means every mode, direct or indirect, ... of disposing of or parting with an asset or an interest in an asset”). The Dissent cites this language as well, arguing that our interpretation reads the term “indirect” out of the statute. Dissenting Op. at 93. But this argument conflates two separate elements of a DUFTA claim: (1) a transfer (2) made by the debtor. In other words, DUFTA may cover an indirect transfer, but that transfer must nonetheless be made “by a debtor” in order to be cognizable under the statute. Nothing in the complaint suggests that Venezuela, the debtor, transferred an asset directly or indirectly. Indeed, it was the recipient of the assets. Crystallex also understandably focuses on the intentional nature of the transaction—to remove assets from the United States to Venezuela where they would not be subject to execution by Venezuela’s creditors. Crystallex points to various “badges of fraud,” including the fact that several Venezuelan officials publicly said that the government would not pay any arbitral awards and that the purpose of the transfers was to shield CITGO Petroleum from potential arbitration judgments. A40-41, A62. Certainly, the intent behind this series of transactions was to hinder creditors. It may be tempting to conclude that PDVH’s transfer to PDVSA was therefore a fraudulent transfer under DUFTA. But these badges of fraud go to only one of the three necessary elements of a DUFTA claim—“actual intent” to hinder, delay or defraud any creditor of the debtor. 6 Del. C. § 1304. Despite detailed allegations of intent, Crystallex’s DUFTA claim against PDVH nonetheless fails because it does not allege a transfer “by a debtor.” B. Theories of Aiding and Abetting and Conspiracy Under DUFTA We now must decide whether Crystal-lex’s complaint nonetheless states a DUF-TA claim against PDVH, given the debtor Venezuela’s alleged role in the transfer scheme. Crystallex clearly alleges that “Venezuela, through its alter ego, PDVSA, perpetrated this transfer to hinder or delay Crystallex’s ability to enforce its arbitration award.” A34. Venezuela “devised” the scheme and “enlisted” its alter ego PDVSA to “extract as much value as possible from CITGO.” A31. PDVSA did so by “orchestrating” a series of transfers that “converted CITGO’s value to cash, then removing those funds from the United States and transferring them into PDVSA’s coffers in Venezuela.” A31. “All of the steps in this fraudulent transfer were planned out ... and were part of a single scheme” to benefit Venezuela. A43. The issue thus becomes whether a claim under DUFTA can be stated where the debtor orchestrated a scheme whereby a non-debtor transferred assets to the debtor. Presumably, this would be based on a theory of aiding and abetting the transfer, or on a theory of conspiracy. The Dissent would find that “even though PDV Holding was not a debtor to Crystallex, it clearly facilitated the fraudulent transfer and is therefore a proper defendant in this case.” Dissenting Op. at 91. However, according to Delaware courts, a DUFTA claim based on a theory of non-principal liability is not cognizable under the statute. The Chancery Court has foreclosed the possibility of aiding and abetting liability under DUFTA. Edgewater, 2010 WL 720150 at *2 (“[T]he Delaware Fraudulent Transfer Act does not create a cause of action for aiding and abetting or conspiring to commit, a fraudulent transfer.”); Trenwick America Litigation Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 203 (Del. Ch. 2006) (“Despite the breadth of remedies available under state and federal fraudulent conveyance statutes, those laws have not been interpreted as creating a cause of action for ‘aiding and abetting.’ ”), Nor can Crystallex succeed on a theory of conspiracy, as the Chancery Court has specifically ruled to the contrary. See Quadrant Structured Products Co. v. Vertin, 102 A.3d 155, 203 (Del. Ch. 2014) (“Under Delaware law, a conspiracy cannot be predicated on fraudulent transfer”). We must give due deference to the Delaware courts’ opinions on these issues of state law, and these opinions limit DUFTA to transfers by debtors—which PDVH is not alleged to be. We cannot extend DUF-TA beyond these confínes. “We leave to ,,. the state legislatures and, where relevant, to the. state courts the task of expanding or restricting liability [theories].” Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 274 (3d Cir. 1985). Crystallex has failed to successfully plead a transfer “by a debtor” and thus failed to successfully plead a fraudulent transfer claim against PDVH under DUFTA. III. Conclusion For the foregoing reasons, we will reverse the order of the District Court and remand for further proceedings consistent with this opinion. . The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1330(a), 1367. This Court has jurisdiction to hear PDVH’s interlocutory appeal under 28 U.S.C. § 1292(b). , PDVSA and CITGO Holding were also named as defendants in the original suit. The District Court dismissed Crystallex's claims against PDVSA and CITGO Holding. Those rulings are not before us on appeal. . Crystallex also alleged claims of common law civil conspiracy against the three defendants. The District Court dismissed those claims against all three defendants. Those rulings are not before us on appeal. .The mechanics of the $2.8 billion debt offering were fairly complex. However, the net result was that CITGO Petroleum was left with negative shareholder equity and rendered insolvent, with most its value transferred to CITGO Holding. . PDVH’s Motion to Dismiss contained two additional arguments. First, it argued that the transfer from PDVH to PDVSA, did not involve property “of a debtor,” as required by the statute. The District Court rejected this argument, and PDVH does not challenge this legal analysis on appeal. Second, PDVH argued that the DUFTA claim was preempted by the attachment immunity provisions of the Foreign Sovereign Immunities Act ("FSIA”). The District Court rejected this argument as well. PDVH appeals that decisiom Because we will reverse the District Court’s order based on the DUFTA claim, we need not reach the FSIA issue. . We review a District Court’s denial of a Rule 12(b)(6) motion to dismiss de novo. F.T.C. v. Wyndham Worldwide Corp., 799 F.3d 236, 242 (3d Cir. 2015). We "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.” Wyndham Worldwide, 799 F.3d at 242. . PDVSA was not involved in the arbitration proceeding. But if we accept as true Crystal-lex’s allegation that PDVSA is the alter ego of Venezuela, it is at least theoretically possible that PDVSA could be liable for the arbitration award as well. . Although these and several other Chancery Court opinions we rely on are unpublished, Delaware courts give such opinions substantial precedential weight. See Aprahamian v. HBO & Co., 531 A.2d 1204, 1207 (Del. Ch. 1987) ("An unreported decision [is] entitled to great deference”); 1-4 Corp. and Commercial Practice in DE Court of Chancety § 4.04, Lexis (2017) ("The mere fact that a case is not reported should not be taken to suggest that unpublished decisions are without prece-dential value. Emphatically to the contrary, unpublished letter and memorandum opinions, and even some oral rulings from the bench, are afforded a considerable prece-dential weight [in Delaware], especially in view of the fact that unreported decisions often are the only authority on point where novel issues are involved"). In predicting how the Delaware Supreme Court would resolve this issue, we thus give such opinions substantial precedential weight as well.