# IN THE SUPREME COURT OF THE STATE OF NEVADA

MOH MANAGEMENT, LLC; 6165 S. DECATUR BLVD., LLC; 4444 W. SUNSET RD., LLC; 9201 CAMPO RD., LLC; 350 S. ROCK BLVD., LLC; AND 820 MCCLINTOCK, LLC,
Appellants/Cross-Respondents,
vs.
MICHELANGELO LEASING, INC., D/B/A DIVINE TRANSPORTATION, AN ARIZONA CORPORATION,
Respondent/Cross-Appellant.

No. 73920



FILED

MAR 29 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a grant of summary judgment by the district court. Eighth Judicial District Court, Clark County; Kathy A. Hardcastle, Judge.

Before this court is a case involving Nevada's Uniform Fraudulent Transfer Act and an exception to the general prohibition against successor liability. In an effort to repay its creditors, Ryan's Express Transportation, Inc. (Ryan) transferred its assets to a trustee under California's assignment for the benefit of creditors law. The trustee then transferred Ryan's assets to Michelangelo Leasing, Inc. (Michelangelo) for $14,398,042.68. Appellants are one group of Ryan's creditors,(collectively, MOH), and they sued Michelangelo in district court claiming that the transfer was fraudulent under the Uniform Fraudulent Transfer Act. MOH also claimed that the transfer was a de facto merger, and therefore Michelangelo should be subject to successor liability for

19-13909

Ryan's debts. The district court granted summary judgment in favor of Michelangelo.

We affirm the district court's grant of summary judgment because: (1) the transfer from the trustee to Michelangelo was not a transfer made by the debtor, and therefore falls outside of the Uniform Fraudulent Transfer Act; and (2) under our decision in *Village Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 112 P.3d 1082 (2005), this transfer is not a de facto merger.

## FACTS AND PROCEDURAL HISTORY

Appellants, MOH, are land management companies that own, operate, and lease commercial properties in Nevada. Ryan was a ground transportation company that provided transportation services in Arizona, California, and Nevada. MOH leased four commercial properties to Ryan, which Ryan allegedly damaged and altered. MOH sued Ryan claiming $50,000 in damages.

Approximately two years later, Ryan, realizing it was undergoing financial difficulties, hired a marketing team to help sell some of its assets. The marketing team delivered an informational packet about Ryan's assets to respondent, Michelangelo. Michelangelo is a luxury motor coach company that provides ground transportation in several states. Michelangelo determined that Ryan's assets would be perfect for its business development, and began negotiations with Ryan. Michelangelo submitted several questions for Ryan about the assets and Ryan's creditors. After receiving answers from Ryan, Michelangelo offered Ryan $12,763,000 for the assets. Then Michelangelo increased its offer to $13,000,000 after it

further negotiated with Ryan. Michelangelo and Ryan signed an asset purchase agreement, which would close the deal a few days later.

Right before the deal closed, Ryan's board of directors decided that Ryan needed to sell substantially all of its assets to satisfy its debts. As such, Ryan entered into an assignment for the benefit of creditors under California Code of Civil Procedure 493.010 and 493.060. The assignment for the benefit of creditors acts as an alternative to a bankruptcy proceeding. Under this procedure, the debtor transfers all of its assets to a trustee of its choosing, and the trustee then sells the assets to repay the creditors.

After Ryan entered into the assignment for the benefit of creditors, its trustee transferred most of Ryan's assets to Michelangelo for $14,398,042.68. This amount was enough to satisfy all of Ryan's secured creditors with $1,081,726 to satisfy remaining unsecured debts. Approximately one year and six months after this transfer, Ryan dissolved as a corporate entity.

In response to this transfer, MOH joined Michelangelo to its original suit against Ryan. MOH then asserted claims of fraudulent transfer and successor liability against Michelangelo in an attempt to collect the $50,000 from Ryan. The district court granted Michelangelo's motion for summary judgment because (1) the good faith exception to the fraudulent transfer rule applied, and (2) there was no basis for successor liability.

## DISCUSSION

### Standard of Review

This court reviews a district court's grant of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029

Supreme Court
of
Nevada

(O) 1947A

(2005). Summary judgment is appropriate when the material facts are undisputed, and when those undisputed facts dictate that the moving party is entitled to "judgment as a matter of law." *Id.*

*The transfer made by Ryan's trustee to Michelangelo does not violate Nevada's Uniform Fraudulent Transfer Act.*

Nevada implemented its Uniform Fraudulent Transfer Act in 1987 to quell debtors from defrauding creditors by "placing subject property beyond the creditors' reach." *Herup v. Boston Fin. LLC.*, 123 Nev. 228, 232, 162 P.3d 870, 872 (2007). This law prohibits three types of fraudulent transfers: "(1) actual fraudulent transfers; (2) constructive fraudulent transfers; and (3) certain transfers by insolvent debtors." *Id.* at 233, 162 P.3d at 873. For both actual and constructive fraudulent transfer, the transfer in question must be made by the debtor. NRS 112.180(1). NRS 112.180(1) states in relevant part: "A transfer made or obligation incurred **by a debtor** is fraudulent as to a creditor . . . if the **debtor** made the transfer or incurred the obligation." (emphasis added). NRS 112.180 then goes on to list the elements of both actual and fraudulent intent in NRS 112.180(1)(a)-(b). In interpreting the text of this statute, we look first to its text, and if the text is plain and unambiguous we look no further. *See Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 579-80, 97 P.3d 1132, 1135 (2004).

NRS 112.180(1) is unambiguous. The first step in analyzing whether actual or constructive fraudulent transfer occurred is to determine if the debtor made the transfer. If the debtor did not make the transfer in question, then Nevada's Uniform Fraudulent Transfer Act offers no protection. This holding is in line with other jurisdictions that have analyzed this provision of their state's Uniform Fraudulent Transfer Act.

*See, e.g., Crystallex Int.'l Corp. v. Petróleos De Venezuela, S.A.*, 879 F.3d 79, 86-88 (3d Cir. 2018) (holding that the debtor and not its subsidiary must make the transfer).

Here, the transfer in question is between Ryan's trustee and Michelangelo. Ryan did not make this transfer. Rather, Ryan transferred its assets to the trustee as required under California's assignment for the benefit of creditors law, and then the trustee transferred the assets to Michelangelo. Because Ryan did not make the transfer, and Ryan, not its trustee is the debtor, the transfer falls outside the scope of Nevada's Uniform Fraudulent Transfer Act. Accordingly, we affirm the district court as to the fraudulent transfer claim.[1]

*Even if the transfer is subject to the Uniform Fraudulent Transfer Act, the transfer falls under the good faith defense.*

Even if the transfer constitutes an actual fraudulent transfer under the Uniform Fraudulent Transfer Act, the transfer is voidable if it falls under the good faith defense described in NRS 112.220(1). *Herup v. Boston Fin. LLC*, 123 Nev. 228, 234, 162 P.3d 870, 874 (2007). Under NRS 112.220(1), an actual fraudulent transfer is not voidable if the person who

---

[1]While the district court used the good faith exception under NRS 112.220 to grant summary judgment, we affirm because the transfer falls outside of Nevada's Uniform Fraudulent Transfer Act. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) ("This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason.").

Additionally, on cross appeal, Michelangelo argues that the district court abused its discretion by failing to strike Michael Haggerty's declaration. However, like the district court, we decline to address this issue because it is immaterial to our analysis.

bought the assets (1) took the assets in good faith and (2) paid reasonably equivalent value for the assets. To prove that the transferee took the assets in good faith the transferee must show that "he or she did not know or had no reason to know of the transferor's fraudulent purpose to delay, hinder, or defraud the transferor's creditors." *Herup*, 123 Nev. at 237, 162 P.3d at 876. Whether a transferee has good faith is evaluated under an objective standard. *Id.*

Here, the undisputed facts show that Michelangelo did not know or have reason to know of any intent to delay. Michelangelo negotiated with two parties to buy Ryan's assets. In both of these negotiations, Michelangelo knew that Ryan was selling the assets to repay its creditors under California's assignment for the benefit of creditors law. Thus, Michelangelo did not know of any intent on the part of Ryan to delay, hinder, or defraud its creditors because the entire purpose of the sale was to satisfy Ryan's debts.

Further, based on the undisputed facts of the case, Michelangelo paid fair market value for the assets that it purchased, and therefore satisfied the definition of reasonably equivalent value. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994) (explaining that outside the foreclosure context "reasonably equivalent value" ordinarily means "fair market value"). Ryan, realizing it was in financial distress, began marketing its assets to potential buyers. Michelangelo negotiated for months with Ryan and its agent, presenting Ryan with a list of more than 40 questions to answer so that Michelangelo could make a reasonable offer. Michelangelo made two offers to Ryan and its agent, $12,763,000 and $13,000,000. Shortly after these offers were made, Ryan entered into an

assignment for the benefit of creditors, due to the fact that it was going to sell almost all of its assets. Then, Michelangelo began negotiating with Ryan's trustee. Ultimately, Michelangelo purchased the assets from Ryan's trustee for $14,398,042.68. Due to the extensiveness of these negotiations, and the changes in price of the goods as those negotiations proceeded, it is apparent under the totality of the circumstances that Michelangelo paid a fair market value for the goods. *See, Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997) (utilizing a totality of the circumstances test to determine whether fair market value of the assets transferred instead of looking to a dollar for dollar equivalent value of the assets). Thus, we find that Michelangelo gave reasonably equivalent value for Ryan's assets. Accordingly, we hold that the district court properly determined that this transfer falls under the good faith defense under NRS 112.220(1).[2]

*Michelangelo's purchase of Ryan's assets do not constitute a de facto merger, and therefore Michelangelo is not liable for successor liability.*

MOH argues that this transfer is a de facto merger, and therefore Michelangelo should be liable for Ryan's debts. We disagree with this argument and affirm the district court.

As a general rule, "when one corporations sells all of its assets to another corporation the purchaser is not liable for the debts of the seller." *Vill. Builders*, 121 Nev. at 268, 112 P.3d at 1087 (2005) *citing Lamb v. Leroy*

---

[2]While MOH uses an expert's declaration to argue that the assets were worth more the price actually paid, reasonably equivalent value, as noted above, is not determined by a dollar for dollar valuation. *See, Barber*, 129 F.3d at 387. Therefore, MOH's expert declaration is irrelevant for this analysis, and we decline to consider whether the district court abused its discretion by not striking it.

*Corp.*, 85 Nev. 276, 279, 454 P.2d 24, 26–27 (1969). However, there are several exceptions to this rule. *See Lamb*, 85 Nev. at 279, 454 P.2d at 27. MOH relies on the de facto merger exception, in an effort to impose successor liability. The de facto merger exception to the successor liability rule applies when the successor corporation has essentially merged with the seller corporation, even though there was no actual merger. *Village Builders*, 121 Nev. at 268-69, 112 P.3d at 1087. To determine whether the de facto merger exception applies, this court looks to four factors: "(1) whether there is a continuation of the enterprise, (2) whether there is a continuity of shareholders, (3) whether the seller corporation ceased its ordinary business operations, and (4) whether the purchasing corporation assumed the seller's obligations." *Id.* at 269, 112 P.3d at 1087. Each of these factors are weighed equally. *Id.* at 269, 112 P.3d at 1088. Further, at least three of the four factors must be met for a plaintiff to demonstrate a prima facie case of de facto merger. *Id.* at 273, 112 P.3d at 1090.

At the outset, MOH concedes that factor two, the continuity of shareholders, weighs against its case. Michelangelo concedes that factor four, the assumption of the seller's obligations, weighs in favor of MOH. Thus, MOH must show that factors one and three weigh in its favor to impose successor liability. MOH fails to show that either of those factors weigh in its favor.

*Continuation of the enterprise*

When evaluating whether there has been a continuation of the enterprise, we "look to whether there is a continuity of management, personnel, physical location, assets and general business operations." *Vill. Builders*, 121 Nev. at 270, 112 P.3d at 1088. We pay special attention to

SUPREME COURT
OF
NEVADA

(O) 1947A

8

whether the successor corporation operated under the same name and logo as its predecessor and whether the successor corporation hired the same upper level managers as its predecessor. *Id.* at 271, 112 P.3d at 1089.

In this case, Michelangelo hired two location managers and assumed two of Ryan's leases. However, Michelangelo was careful to change the logos on the vehicles it was using. Additionally, Michelangelo did not hire any of the upper level management team. Given the fact that Michelangelo did not hire any upper level managers and did not operate under Ryan's logos or name, we conclude that this factor weighs against MOH.

*Cessation of ordinary business operations.*

When evaluating whether the cessation-of-ordinary-business-operations factor has been met, we look to whether the business that sold its assets continued to exist after the asset purchase took place.[3] *Vill. Builders,* 121 Nev. at 272, 112 P.3d at 1089-90. A business continues to exist when it is maintained as a corporate entity and is amenable to suit. *Id.* at 272, 112 P.3d 1090. Even when a business's existence is transcendental and the business does not engage in any business operations, it still exists for the purposes of meeting this factor. *Id.* at 272, 112 P.3d 1089-90.

In this instance, Ryan did not cease to exist as a corporate entity. Ryan still had numerous assets and land leases. Further, Ryan

---

[3]MOH urges this court to adopt a different standard, which is used in Massachusetts, to evaluate whether the business ceased to exist. We decline to do so, as our precedent has already established a standard for us to follow.

continued with the underlying lawsuit brought by MOH for nearly six months after the sale of these assets. Therefore, we find that this factor also weighs against MOH. Accordingly, we conclude that three of the four factors of the de factor merger exception weigh against MOH, which means Michelangelo is not subject to successor liability for Ryan's debts, and therefore, we

ORDER the judgment of the district court AFFIRMED.

_____ , J.
Pickering

_____ , J.
Parraguirre

_____ , J.
Cadish

cc: Chief Judge, The Eighth Judicial District Court
Hon. Kathy A. Hardcastle, Senior Judge
John Walter Boyer, Settlement Judge
Robbins Law Firm
H1 Law Group
Eighth District Court Clerk